A. C. PARSONS v. D. T. WRIGHT AND WIFE, MYRTIE WRIGHT.

(Filed 3 November, 1943.)

**1. Highways § 6—**

The term *highway* is the generic name for all public ways, including roads, streets, railroads, bridges, canals, navigable rivers; and *roads* and *streets* include all highways by land.

**2. Highways § 7—**

Cartways are an auxiliary part of the public road system and they· are designated *quasi*-public roads, and the condemnation of private property for such use has been sustained upon the ground that it is a valid exercise of the power of eminent domain.

**3. Highways § 13—**

A *quasi*-public way located in a rural section is, under our statute, a cartway. When it is within the corporate limits of a town or city it is an alley. Location determines the name, but the essential characteristics are the same.

**4. Municipal Corporations § 5—**

When a municipal corporation is established, it takes control of the territory and affairs over which it is given authority, to the exclusion of all other governmental agencies. The authorities of counties, embracing such cities or towns, are precluded from exercising the same power within the same territory.

**5. Municipal Corporations § 29: Highways § 7—**

General statutes of the State, in regard to public highways, do not apply to the streets and alleys of an incorporated town or city, and the county authorities have no power or authority over such streets and alleys.

**6. Highways § 14—**

> The law relating to cartways, Public Laws 1931, ch. 448, was not intended to withdraw from cities and towns any part of their exclusive control over their streets, and other public ways, and confers no jurisdiction on the clerk of the Superior Court to establish an alley within an incorporated town.

APPEAL by defendants from *Burgwyn, Special Judge,* at April Term, 1943, of MONTGOMERY.   Reversed.

Petition in special proceedings before the clerk of the Superior Court to establish a cartway.   The plaintiff owns a lot, upon which is located a tenant house, in the town of Star.   The defendant D. T. Wright owns an adjoining lot which lies between plaintiff's lot and the public street. The only way of access plaintiff has to his lot is over a driveway across the municipal cemetery.   He seeks to have a cartway established extending from the northeastern edge of his lot along the eastern end of defendants' lot to the street.   Defendants deny the right of the plaintiff to the cartway and challenge the jurisdiction of the clerk.

The clerk entered an order granting the petition and appointing commissioners to lay out the cartway and assess the damages.   Defendants appealed to the Superior Court.   When the cause came on to be tried in the court below there was a verdict and judgment for the plaintiff, and the defendants appealed.

*Seawell & Seawell for plaintiff, appellee.*
*L. L. Moffitt and J. A. Spence for defendants, appellants.*

BARNHILL, J.   Does the clerk of the Superior Court have jurisdiction of a proceeding to lay off and establish a cartway within a municipality? If this question is resolved in favor of the defendants the other questions presented on this appeal become immaterial.

"The term *highway* is the generic name for all kinds of public ways, whether they be carriage-ways, bridle-ways, foot-ways, bridges, turnpike roads, railroads, canals, ferries, or navigable rivers."   Bouvier's Dict., Tit. Highway; Elliott, Roads and Streets, p. 1; 25 Am. Jur., 340.

The term "street" is ordinarily applied to a public way in a city, town, or village, and the word "road" to a free public way in the county, while the two—roads and streets—include all public highways by land, whether designated as highway, road, street, alley, lane, place, or boulevard.   1 Lewis Em. Dom. (3rd), p. 171; 25 Am. Jur., 342.

Cartways are public roads in the sense that they are open to all who see fit to use them, although the principal benefit inures to the individual or individuals at whose request they were laid out.   The term is used

merely for the purpose of classification and to distinguish a class of roads benefiting private individuals who, instead of the public at large, should bear the expense of their establishment and maintenance. They are designated *quasi*-public roads, and the condemnation of private property for such use has been frequently sustained upon that ground as a valid exercise of the power of eminent domain. *Cook v. Vickers,* 141 N. C., 101, 58 S. E., 740; *Barber v. Griffin,* 158 N. C., 348, 74 S. E., 110; *Waldroup v. Ferguson,* 213 N. C., 198, 195 S. E., 615; 50 C. J., 380, sec. 5. They are properly considered an auxiliary part of the public road system of the county, although they are distinguished from public highways proper. *Cook v. Vickers, supra.*

The term "alley" relates exclusively to a way in a town or city. 13 R. C. L., 18, sec. 7. When not qualified by the word "private," it is a narrow passage for the convenience of the owner of property abutting thereon and of the persons dealing with him. 13 R. C. L., 18, sec. 7; 25 Am. Jur., 343. It is available for all who desire to use it, and it forms a part of the system of streets or public ways of the town or city. 2 C. J., 1151.

Hence, a *quasi*-public way located in a rural section is, under our statute, a cartway. When it is within the corporate limits of a town or city it is an alley. Location determines the name, but the essential characteristics are the same.

Primarily, all power over all thoroughfares is with the Legislature. This power has been so delegated by the Legislature as to give control of urban ways to the cities and towns, and of suburban ways, other than state highways, to the county boards—now the State Highway Commission. Ch. 145, Public Laws 1931. In keeping this control subdivided, an orderly system has been provided with reference to the establishment, improvement, repair, and vacation of ways, and the sources from which the necessary funds are derived, and the officers executing these various functions and expending such funds.

When a municipal corporation is established it takes control of the territory and affairs over which it is given authority to the exclusion of other governmental agencies. The object of incorporating a town or city is to invest the inhabitants of the municipality with the government of all matters that are of special municipal concern, and certainly the streets are as much of special and local concern as anything connected with a town or city can well be. It ought, therefore, to be presumed that they pass under the exclusive control of the municipality so soon as it comes into existence under the law. *Gunter v. Sanford,* 186 N. C., 452, 120 S. E., 41; 1 Elliott on Roads and Streets, sec. 505; 2 Cooley on Taxation, 1251; 44 C. J., 889, sec. 3608. See also *Gastonia v. Cloninger,* 187 N. C., 765, 123 S. E., 76.

It is usually given express power by its charter to lay out and open streets. Such is the case here. Ch. 84, Private Laws 1913. Charter provisions are supplemented by our general statutes. C. S., 2787. Under the power thus conferred the municipal authorities are the sole judges of the necessity or expediency of exercising that right. 44 C. J., 889, sec. 3608. Its power over its streets is exclusive. *Moore v. Meroney,* 154 N. C., 158, 69 S. E., 838; *Waynesville v. Satterthwait,* 136 N. C., 226, 48 S. E., 661; *Michaux v. Rocky Mount,* 193 N. C., 550, 137 S. E., 663. County authorities embracing such city or town are precluded from exercising the same power within the same territory. 1 Lewis Em. Dom. (3rd), 700, sec. 383. (See n. 24 for authorities.) "In the nature of things, there can be no divided control of the streets within the limits of a city . . ." *McGrew v. Stewart,* 32 Pac., 896; *Board of Com'rs v. Chicago, M. & St. P. Ry. Co.,* 132 N. W., 675.

This authority extends to alleys as a part of the system of streets. C. S., 2787 (11). "When it is proposed by any municipal corporation to condemn any land . . . for the purpose of opening . . . any . . . alley . . . an order or resolution of the governing body of the municipality at a regular or special meeting shall be made stating generally, or as nearly as may be, the nature of the proposed improvement for which the land is required . . ." Sec. 2792 (b), Michie's N. C. Code of 1939.

General statutes frequently give to some county board or corresponding body power to control all highways within its jurisdiction, without excepting streets. It is well settled, however, that if a city be given power to control streets, its exercise of that power is exclusive, and a county board acting under a general road law will have no jurisdiction within its borders. 44 C. J., 160, sec. 2278; *Board of Com'rs v. Chicago, M. & St. P. Ry. Co., supra.*

General statutes of the state, in regard to public highways, do not apply to the streets and alleys of an incorporated town or city, and the county authorities have no power or authority over city streets for any purpose without the consent of the city authorities. 1 Elliott, Roads and Streets (4th), 608; *Board of Com'rs v. Chicago, M. & St. P. Ry. Co., supra; State v. Chicago, I. & L. Ry. Co.,* 51 N. E., 914 (Ill.).

The law relating to cartways was revised and re-enacted in 1931. Ch. 448, Public Laws 1931. We must assume that the Legislature, when it came to enact this statute, was fully aware of and took into consideration the accepted meaning of "cartway" as distinguished from an alley, and that it had no intent to withdraw from cities and towns any part of their exclusive control over their streets and other ways of public travel. It must be deemed to have acted with knowledge of the general principles which apply to such political subdivisions and the expectation that they

shall exercise the usual jurisdiction of such subdivisions exclusively, and not divide it with other public or *quasi*-public agencies.

Sound principle requires that the courts should hold that the creation of a municipal corporation implies, in the absence of clear words to the contrary, that it shall have control of the streets within its territorial limits to the exclusion of county officers. This seems to be the reasonable rule, consistently followed in this State. Intention to modify this "exclusive power over the streets" and to disturb this prevailing orderly system should be manifest before the courts could construe the act in question as giving the clerk of the Superior Court control of the establishment of cartways or alleys within an incorporated town. This "exclusive power" vested in a city is utterly inconsistent with the exercise of any such power by the clerk or other county official. *State v. Chicago, I. & L. Ry. Co., supra.*

A contrary holding would result in confusion and disastrous conflicts of jurisdiction and authority. It ought not to be inferred, without strong reason, that the Legislature intended such a result.

No such reason is made to appear. On the contrary, the Legislature used the word "cartway," the term ordinarily employed to designate a *quasi*-public way, auxiliary to the county road system. It did not include "alley," a similar way located within a municipality and forming a part of the system of streets. That it did not intend to go further than the language used implies seems to be clear.

We conclude, therefore, that chapter 448, Public Laws of 1931, confers no jurisdiction on the clerk of the Superior Court to establish an alley within an incorporated town. His jurisdiction is limited to those *quasi*-public ways which become an auxiliary part of the county road system.

For the reason stated the judgment below is

Reversed.