MRS. ROBERT L. FAW, JR. v. THE TOWN OF NORTH WILKESBORO.

(Filed 23 November, 1960.)

1. **Municipal Corporations §§ 12, 28—**

Evidence tending to show that an alley in a municipality was paved and was habitually used by the public as a walkway, and that the municipality maintained a water line with meter boxes in the alley, is sufficient to show that the municipality exercised such control over the alley as to constitute it a public way within the purview of the rule that a municipality is under duty to exercise reasonable care to keep its streets in a reasonably safe condition for public use, there being no distinction in law between a public street and a public alley.

2. **Municipal Corporations § 12—**

A pedestrian is entitled to recover damages resulting from a fall on a public street or alley only upon a showing of negligence on the part of the municipality as a proximate cause of the fall.

3. **Same—**

Where defect in a public way proximately causes the fall of a pedestrian to her injury, the municipality may be held liable only if injury from such defect might reasonably have been foreseen and the officers of the town knew of such defect or such defect had existed for such length of time that its officers should have discovered it in the exercise of due care, and therefore had constructive notice thereof.

4. **Municipal Corporations § 5—**

In selling water for private consumption, a municipality is engaged in a proprietary capacity and is liable for negligence in connection therewith; in supplying water for fire fighting purposes or for other public purposes, a municipality is engaged in a governmental capacity and cannot be held liable for negligence in connection therewith.

5. **Municipal Corporations § 12—**

Evidence tending to show that plaintiff was injured in a fall resulting when the lid of a water meter box, located in a public alley, dislodged as she stepped on it, that the lid of the box was insecure because it had become worn and rounded, that it was apt to bounce off when stepped on, and that such condition had existed for some four to six years, is sufficient to be submitted to the jury on the issue of the municipality's negligence and does not disclose contributory negligence as a matter of law.

APPEAL by plaintiff from *Olive, J.,* Regular June Term, 1960, of WILKES.

Action for damages for personal injury resulting from plaintiff, while she was walking in a paved alley of the town of North Wilkesboro, stepping on the cover of a water meter box, which cover bounced off on the pavement, and her left foot and leg went into the box causing the injury.

From a judgment of involuntary nonsuit entered at the close of plaintiff's evidence she appeals.

*McElwee, Ferree & Hall for plaintiff, appellant.*
*Whicker & Whicker for defendant, appellee.*

PARKER, J. In the town of North Wilkesboro there is an alley paved with concrete about 30 feet wide running between Ninth and Tenth Streets. Plaintiff in her complaint alleges that defendant provided for and regulated a water works for the citizens of the town. Defendant in its answer admits the truth of this allegation, but alleges that in the operation of the water works it acted in a governmental function. In its answer defendant admits that on 19 May 1959 it maintained for the benefit of the public an underground water valve in this alley, and that covering this valve there was a circular water meter cover about ten inches in diameter made of metal, that this circular water meter cover fitted in a lip about one-half inch in width located on the water meter box.

About 10:30 a.m. on 19 May 1959, a clear, warm day, plaintiff holding her two-year-old son by the hand was walking on this alley in the direction of Tenth Street for the purpose of purchasing a toy for her son at Crest Dime Store. Before entering Tenth Street her left foot and leg fell into a water meter box about three or four or five feet from Tenth Street and back of Crest Dime Store. As she fell, there was a big clang resulting from the metal cover of the water meter box bouncing off on the pavement five or six inches from the water meter box. When plaintiff was helped up, the outer skin of her leg had been torn away, and her leg had a lot of grease, blood and stuff coated on it. She is now 24 years old, and had walked on this alley since she was a small child hundreds of times. Automobiles use this alley. The alley has no sidewalk. She was looking where she was going. She did not see the water meter box, and had never seen one in the alley.

About 1:30 p.m. on the day plaintiff fell, her husband went to the alley, and saw the cover or lid of the water meter box in which his wife said she fell. The cover or lid was round, and fitted down on top of the box that was down in the ground. On the rim or lip of the water meter box he saw gravel, cinders and dirt. In his opinion, the cover or lid did not fit. He saw this water meter box again in May 1960, and the cover or lid he saw there then was the same cover or lid he saw there on 19 May 1959.

Fidell Frazier, a licensed plumber in the State of North Carolina

since 1947, who, for 17 years has had to contend as a plumber with water meters in towns and cities three or four times a week, and, who, during that time has observed rims and covers of water meter boxes, testified as a witness for plaintiff. In May 1960 he examined the water meter box, its rim and cover in the alley near Tenth Street back of Crest Dime Store. The rim was worn off, rounded, and the lid was worn off, rounded. The rim had quite a bit of play, it was much larger than the cover or lid. He testified: "I put the lid on there and stepped on the edge of it and it kicked right off. I put it on again and stepped on it and it didn't kick off and I put it on the third time and stepped on it and it kicked off the third time, two out of three times. The lid sits right down into the rim. There is a form around the rim for the lid to sit on in the box and it just sits down inside there. It has about a half inch to five-eights play, I have an idea. The cover did not fit flush into the rim." In his opinion as a plumber the conditions he saw there existed in 1959, and had existed for at least four to six years.

The complaint specifically alleges "that the defendant failed to provide the plaintiff and others similarly situated a safe place in which to walk upon the public alleyway of the said town." The term "alley," it seems, relates exclusively to a way in a town or city. *Parsons v. Wright,* 223 N.C. 520, 27 S.E. 2d 534; 25 Am. Jur., Highways, p. 343. Defendant's answer does not allege that it is a private alley, but refers to it as an alley. It does not allege that the alley did not belong to the town, or that it was not under the control of the town.

There is no evidence as to who owns this alley, or who paved it or who maintains it. There is evidence in the record that defendant has three water meter boxes in this alley, and defendant admits in its answer that it "maintains, operates and controls a water line located in the alley leading from Ninth to Tenth Streets in the town of North Wilkesboro." Plaintiff's evidence, considered in the manner most favorable to her, suffices to show that defendant municipality exercises some control at least over this alley in operating water works for the benefit of its citizens, that this is a public alley connecting Ninth and Tenth Streets in the town, and by its use in fact by the public for many years it has become a street of the town. See *Whitacre v. Charlotte,* 216 N.C. 687, 6 S.E. 2d 558; *Musick v. Borough of Latrobe,* 184 Pa. 375, 39 A. 226. This Court said in *Parsons v. Wright, supra:* "It (an alley) is available for all who desire to use it, and it forms a part of the system of streets or public ways of the town or city."

"Public alleys, like streets, are under the control of the municipal authorities, and the prevailing rule is that there is no distinction, in law, between a public street and a public alley, and hence a public alley is governed by the rules applicable to streets." McQuillin, Municipal Corporations, 3rd Ed., Vol. 10, p. 541.

The general rule in this country is that a municipality which has full and complete control over the streets and highways within its corporate limits is held liable in damages for injuries occasioned by its failure to use reasonable care to keep a public alley, which is used as a public way, in a reasonably safe condition for such use. *Ferguson v. City of Yakima*, 139 Wash. 216, 246 P. 287, 48 A.L.R. 431; Anno 44 A.L.R. pp. 814-815 — Liability of municipality for injury to traveller in alley; 63 C.J.S., Municipal Corporations, pp. 103-104; 25 Am. Jur., Highways, sec. 401, Alleys.

This Court said in *Smith v. Hickory*, 252 N.C. 316, 113 S.E. 2d 557: "The governing authorities of a town or city have the duty imposed upon them by law of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who use them in a proper manner. Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect in the street or sidewalk and the injury: he must also show that the officers of the town or city knew, or by ordinary diligence, might have known of the defect, and the character of the defect was such that injuries to travellers using its streets or sidewalk in a proper manner might reasonably be foreseen. Actual notice is not required. Notice of a dangerous condition in a street or sidewalk will be imputed to the town or city, if its officers should have discovered it in the exercise of due care. This principle is firmly established in our decisions." This duty is now imposed by statute, with a proviso not applicable upon the evidence here. G.S. 160-54.

It appears from the allegations in the complaint and the admissions in the answer that the town of North Wilkesboro owns and operates a water works system, including water meter boxes, for supplying its inhabitants with water for domestic purposes, and itself with water for the extinguishment of fires.

It is generally held, that insofar as a town or city undertakes to sell water for private consumption it is engaged in a commercial venture, as to which it functions in a proprietary or corporate capacity, and for negligence in connection therewith it is liable. Insofar, however, as a municipality undertakes to supply water to extinguish fires, or for some other public purpose, it acts in a governmental

capacity, and cannot be held liable for negligence. *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411; *Woodie v. North Wilkesboro,* 159 N.C. 353, 74 S.E. 924; McQuillin, Municipal Corporations, 3rd Ed., Vol. 18, pp. 423-424.

We have held in *Bailey v. Asheville,* 180 N.C. 645, 105 S.E. 326, and in *Gasque v. Asheville,* 207 N.C. 821, 178 S.E. 848, that a municipality is liable for injuries to persons resulting from its negligence in connection with a water meter box it owns and maintains in its street. See also the following water meter box cases in which the municipality was held liable: *Wilkins v. Rutland,* 61 Vt. 336, 17 A. 735; *City of Boulder v. Burns,* 135 Colo. 561, 313 P. 2d 712; *Butler v. City of McMinnville,* 126 Ore. 56, 268 P. 760; and also McQuillin, Municipal Corporations, 3rd Ed., Vol. 18, pp. 430-431. *Gettys v. Marion,* 218 N.C. 266, 10 S.E. 2d 799, is factually distinguishable.

Plaintiff's evidence, considered in the manner most favorable to her, tends to show that defendant operated and maintained a water meter box for the benefit of its inhabitants placed in a public alley connecting Ninth and Tenth Streets in the town of North Wilkesboro, which alley was used by the public as a street, that the cover or lid of this water meter box was insecurely fastened and apt to bounce off if a pedestrian stepped on it due to the cover and the rim of the water meter box having become worn and rounded and the rim being larger than the cover, that this dangerous condition had existed for at least four to six years, a time sufficient to give defendant constructive notice of such dangerous condition, and that the character of this defect was such that injuries to pedestrians using this public alley in a proper manner might be reasonably anticipated by defendant. Certainly, plaintiff's own evidence does not show as a matter of law that she was guilty of contributory negligence. The judgment of involuntary nonsuit entered below is

Reversed.