NORENE ALLEN MOSSELLER v. CITY OF ASHEVILLE.

(Filed 20 April, 1966.)

**1. Municipal Corporations § 12—**

The burden of proof is upon a pedestrian seeking to recover from a municipality for a fall on a street to introduce evidence which, considered in the light most favorable to her, is sufficient to show negligence on the part of the city and that such negligence was a proximate cause of the fall and injury.

**2. Municipal Corporations § 15—**

The operation of a waterworks system is a proprietary function of a municipality and it is held to the same liability for injury therefrom as a privately owned water company would be.

**3. Same; Municipal Corporations § 12—**

In order to recover from a city for injury resulting from a defect in a city street or a defect in the city's water system, plaintiff must show that the city had actual notice of the defect or that the defect had existed for such a length of time that the city should have discovered it in the exercise of reasonable inspection, and that it failed to remedy such defect in a reasonable time after such notice.

**4. Same—**

A municipality is under duty to exercise reasonable care to maintain a reasonable and continuing supervision over its streets, and the city is held to have knowledge of a defect which such inspection would have disclosed.

**5. Same—**

Evidence tending to show that a water main under the end of a dead-end street leaked for a period of two weeks and that a small volume of water from such leak flowed down the gutter of such street for one block to the intersecting street, is insufficient to charge the city with constructive notice of the defect.

**6. Same— Evidence held insufficient on issue of negligence of municipality in deferring repair of small leak in its water main.**

The evidence tended to show on the day prior to the accident defendant municipality was given actual notice of a leak in its water main, result-

ing in a flow of a small volume of water down the gutter of one block of a dead-end street, that on the day of the accident the ground was covered with about an inch of soft snow, that plaintiff walked from her door to the curb and stepped into the street, that her foot slipped on a thin sheet of ice concealed by the snow, causing her to fall to her injury as she was entering a car at the curb. *Held:* The evidence is insufficient to be submitted to the jury on the issue of the city's negligence in failing to repair the defect on the day it received actual notice thereof, since injury from such defect to a person using the street in a normal manner could not have been reasonably anticipated from the delay in repairing the defect for a few days.

MOORE, J., not sitting.

APPEAL by plaintiff from *Martin, S.J.,* 6 December 1965 Regular Civil Session of BUNCOMBE.

Plaintiff sues for personal injuries sustained when she slipped and fell upon the street in front of her residence as a result of stepping upon a sheet of ice concealed by a light covering of new fallen snow. She alleges that the city was negligent in that it permitted its water main to continue to leak without repairing the same so that water ran upon the street and froze thereon, thus creating a hazard to persons using the street. She alleges that the city knew, or by the exercise of reasonable diligence should have known, of the condition upon the street. The plaintiff presented her claim to the city and demanded compensation for her injuries prior to instituting the suit. The city, in its answer, denies all allegations of negligence by it and pleads contributory negligence by the plaintiff, alleging that she knew, or should have known, of the presence of the water upon the street and of the prevailing temperature and weather conditions.

The plaintiff offered evidence tending to show the following facts, in addition to evidence as to the nature and extent of her injuries:

On 6 March 1962, she and her husband resided at 11 Furman Court in the City of Asheville. Furman Court is a short, dead-end street running down hill from the dead-end to Furman Avenue. A city water main runs under the dead-end portion of Furman Court. It and other like mains are used by the city in supplying water to the public for compensation. For approximately two weeks prior to her fall, she observed water running from the dead-end down Furman Court upon the same side of the street as her residence. At no time, prior to her fall, had she observed any ice formed upon this stream of water.

When she arose on 6 March 1962, she noted that a light snow had fallen, covering the ground to a depth of approximately one

inch. She was employed by the American Red Cross and, as she left home for work that morning, she wore low heeled shoes and rubber boots or overshoes, which had "pebbled," flat soles and heels. She walked down several steps from her porch, thence along the walkway leading through her yard to the street, the footing being firm and not slippery. An automobile was waiting at the curb to carry her to work. Reaching the curb, she stepped down to the street level with her right foot and as she took her left foot from the curb, her right foot slipped from under her and she fell, sustaining fractures of the right leg.

While lying upon the street, she put her hand down and found there was a thin sheet of ice under the snow. This sheet of ice extended ·out into the street approximately two feet from the curb. Until she stepped upon it, the ice was concealed by the new fallen snow, the total depth of snow and ice not being sufficient to change the contour of the street noticeably. In walking down the porch steps, out to the street and off the curb onto the street, she stepped carefully because of the snow, which was dry and fluffy, not slippery. There was no ice upon the porch steps or upon the walkway leading from the steps to the curb.

The records of the City Water Department show that the city repaired a leak at 20 Furman Court on 8 March 1962, two days after the plaintiff fell, the repair being made within the street itself. The superintendent's best opinion is that he went to Furman Court and observed the need for repairs three days before the repairs were made, which would be on the day before the plaintiff fell. Had he then observed what he considered a "big leak," he would have put someone on the job of repairing it immediately. His visit to Furman Court on that occasion was in consequence of some complaint that had been made concerning the water leak.

In times of bad weather, such as icy conditions or snow, the city keeps its Water Department employees on stand-by duty and tries to correct the more serious leaks first. There was no rain, snow or other precipitation on 5 March 1962.

The water, which froze and became the ice on which the plaintiff fell, came out of a break in the city's water main, rose from the broken main to the surface of Furman Court and then flowed down hill, past the plaintiff's residence, toward Furman Avenue. The flow of water was about two and a half feet in width, extending out into the street from the curb, the depth of the water being very slight.

At the conclusion of the plaintiff's evidence the defendant moved for judgment of nonsuit, which motion was allowed. From such judgment the plaintiff appeals, assigning as error the granting of such motion and the entry of such judgment.

*Williams, Williams & Morris for plaintiff appellant.*

*Van Winkle, Walton, Buck & Wall by O. E. Starnes, Jr., for defendant appellee.*

LAKE, J. The judgment of nonsuit must be sustained unless the evidence offered by the plaintiff, considered in the light most favorable to her, is sufficient to show negligence by the city which was the proximate cause of the plaintiff's fall and injury. The burden is upon the plaintiff to establish such negligence and causation. *Walker v. Wilson,* 222 N.C. 66, 21 S.E. 2d 817.

When a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage resulting from such operation to the same extent and upon the same basis as a privately owned water company would be. *Faw v. North Wilkesboro,* 253 N.C. 406, 117 S.E. 2d 14; *Candler v. Asheville,* 247 N.C. 398, 101 S.E. 2d 470; *Woodie v. North Wilkesboro,* 159 N.C. 353, 74 S.E. 924; McQuillin, Municipal Corporations, 3rd Ed., § 53.104; 56 Am. Jur., Waterworks, § 38. It is not an insurer against injury or damage by water leaking from such system. It is liable only if the escape of the water was due to its negligence either as to the initial break in the water line or in its failure to repair or cut off the line so as to stop the flow. 94 C.J.S., Waters, § 309. The reasonable care which is required of the city when engaged in such operation, like that required of a privately owned water company, includes the exercise of ordinary diligence to discover breaks in its lines and to correct such defects of which it has notice, or which it could have discovered by the exercise of reasonable inspection. Since the record is silent as to what caused the leak to develop in the water line, the plaintiff, in order to recover from the city as the operator of a system of waterworks, must show that the city was negligent in its failure to take steps to stop the flow of water after it had actual or constructive notice of the leak.

As an alternative theory upon which to recover for her injury, the plaintiff asserts the failure of the city to keep its public street in a safe condition. While the city is not an insurer of the safety of one who uses its streets and sidewalks, it is under a duty to use due care to keep its streets and sidewalks in a reasonably safe condition for the ordinary use thereof. G.S. 160-54. The controlling principles of law are thus stated by Parker, J., now C.J., in *Smith v. Hickory,* 252 N.C. 316, 113 S.E. 2d 557:

"The governing authorities of a town or city have the duty imposed upon them by law of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who use them in a proper manner. Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect in the street or sidewalk and the injury: he must also show that the officers of the town or city knew, or by ordinary diligence, might have known of the defect, and the character of the defect was such that injuries to travellers using its street or sidewalk in a proper manner might reasonably be foreseen. Actual notice is not required. Notice of a dangerous condition in a street or sidewalk will be imputed to the town or city, if its officers should have discovered it in the exercise of due care."

To the same effect see: *Faw v. North Wilkesboro, supra; Gettys v. Marion,* 218 N.C. 266, 10 S.E. 2d 799; *Bailey v. Winston,* 157 N.C. 252, 72 S.E. 966; *Fitzgerald v. Concord,* 140 N.C. 110, 52 S.E. 309.

It will be observed that in this case the water did not escape from the city's property and invade the property of another. It flowed from the break in the pipe, which was under the street, up to the surface of the street and thence down the gutter line of the street, eventually passing, presumably, into the city's system of storm sewers. Thus, there is no question here of trespass or of property damage. The evidence indicates that one observing the flow of water would have no reason to anticipate damage to any property thereby.

The plaintiff must recover, if at all, on the theory that the city was negligent in failing to stop the flow of water down the gutter line of its street because it should have foreseen danger of personal injury to a user of the street if the flow continued. This is true whether she rests her case upon the duty of the city as the operator of a water system or upon the duty of the city to keep its streets in a reasonably safe condition. In order to hold the city liable, it must appear that the city knew or should have discovered the water was so running upon the street; that it should have foreseen danger of personal injury to one using the street if the flow of water was not checked; and that it failed to act to stop the flow within a reasonable time.

It is the duty of the city to exercise a reasonable and continuing supervision over its streets in order that it may know their condition and it is held to have knowledge of a defect which such inspec-

tion would have disclosed to it. *Faw v. North Wilkesboro, supra; Bailey v. Winston, supra.* However, the city's duty to inspect and discover defects in its streets does not go beyond the duty to exercise reasonable care in that respect. *Jones v. Greensboro,* 124 N.C. 310, 32 S.E. 675. No arbitrary rule can be laid down with reference to how frequently the city must inspect its streets. *Revis v. Raleigh,* 150 N.C. 348, 63 S.E. 1049.

The evidence indicates that the flow of water along the side of Furman Court was not large in volume. If an officer or employee of the city had passed the end of this one-block, dead-end street and had observed the flow of water along the line of the gutter, he might easily have failed to conclude therefrom that it was anything more than a temporary condition, or that its point of origin was a defect in the system of waterworks. The evidence is that the water so ran down this one-block street for approximately two weeks. The evidence is not sufficient to show constructive notice to the city of the leak in its water main.

There is, however, evidence of actual notice to the superintendent of the Water Department. In response to a complaint, he went to Furman Court and found the water main was leaking, but this was not until the day before the plaintiff fell. The evidence does not show at what hour of the day his visit to the scene occurred. There is nothing in the evidence to indicate that he did not go to Furman Court promptly upon receipt of the complaint. The leak was repaired on the third day after he went there and saw the leak, the plaintiff having fallen in the meantime. His testimony, on adverse examination, was that the leak was not what he considered a "big leak." The plaintiff's husband testified that on the day when the superintendent observed the leak there was "no indication of bad weather."

It is not every defect in a street or sidewalk which will render a city liable to a person who falls as a result thereof. Trivial defects, which are not naturally dangerous, will not make the city liable for injuries occasioned thereby. *Watkins v. Raleigh,* 214 N.C. 644, 200 S.E. 424. To recover, the plaintiff must not only show that the city knew of the defect but must go further and show that "the character of the defect was such that injuries to travellers using its street or sidewalk in a proper manner might reasonably be foreseen." *Smith v. Hickory, supra; Fitzgerald v. Concord, supra; Revis v. Raleigh, supra.*

In *Oliver v. Raleigh,* 212 N.C. 465, 193 S.E. 853, Barnhill, J., later C.J., speaking for the Court, said:

"All portions of a public street from side to side and end to end are for the public use in the appropriate and proper method, but no greater duty is cast upon the city than that it shall maintain the respective portions of its streets in a reasonably safe condition for the purposes for which such portions of the streets are respectively devoted. [Citations omitted]. A municipality is only required to maintain the respective portions of the streets in reasonably safe condition for the purposes to which they are respectively devoted; thus, the driveway must be kept in such a state of repair as to be reasonably safe for horses and vehicles, but not necessarily pedestrians. [Citations omitted].

"In each case the way is to be pronounced sufficient or insufficient as it is, or is not, reasonably safe for the ordinary purposes of travel under the particular circumstances which exist in connection with that particular case."

When the superintendent of the Water Department actually observed this water flowing from the leak in the water main, there being no evidence of actual notice to the city prior to that day, he observed a flow down the gutter line of the street which was "not big." The water was not escaping from the street. So long as the flow of water continued as it then was, it could not be reasonably foreseen that it would cause injury to a person using the street in the normal manner. There was then no indication of "bad weather." While it might have been foreseen that water trickling along a paved street in Asheville over night, during the first week of March, might freeze, this, in itself, would not make the street so hazardous as to impose upon the city the duty to call out its repair crew and correct the leak immediately. It was the fall of a thin covering of dry, fluffy snow upon the thin sheet of ice which made the surface of the street at that point exceedingly slippery and caused the plaintiff's footwear to be less effective than it otherwise would have been in preventing her from slipping.

Assuming that the plaintiff slipped and fell upon the street, without any fault of her own, this does not, of itself, impose liability upon the city, either as the operator of the leaky water main or as the custodian of the street. There was nothing in the situation shown to have confronted the superintendent of the Water Department, when he stood at the scene of the leak on the preceding day, which made it unreasonable for him to defer sending the repair crew to this particular leak.

In *Carl v. New Haven,* 93 Conn. 622, 107 Atl. 502, the plaintiff

fell upon a sidewalk coated with ice, which, itself, was covered with new fallen snow. The Supreme Court of Errors of Connecticut said:

> "The notice, actual or implied, of a highway defect causing injuries which a municipality must receive as a condition precedent of liability for those injuries, is notice of the defect itself which occasioned the injury, and not merely of conditions naturally productive of that defect and subsequently in fact producing it. 'Notice of another defect, or of the existence of a cause likely to produce the defect, is not sufficient.' [Citations omitted]. Were it otherwise, and municipalities were charged with notice of defects which the future should develop upon the strength alone of their knowledge of such conditions as were calculated to produce them, the expansion of municipality liability for highway defects would be enormous, the burden of repair and remedy cast upon them would be vastly enlarged, and a wide field of uncertainty opened up in which triers might wander comparatively unrestrained in speculations as to causes and anticipated results."

The evidence, viewed in the light most favorable to the plaintiff, does not show negligence by the city in deferring the repair of the leak in the water main from the day before the plaintiff's injury to a time shortly thereafter. Consequently, the judgment of nonsuit was proper.

Affirmed.

MOORE, J., not sitting.