ELSIE W. WATERS v. CITY OF ROANOKE RAPIDS.

(Filed 12 April, 1967.)

**1. Municipal Corporations § 12—**

It is the duty of a municipality to exercise a reasonable and continuing supervision over its streets and sidewalks, including the inspection thereof in a manner and with a frequency reasonable in view of the location, nature and extent of the use of each street or walk.

**2. Same—**

In an action to recover for injuries received in a fall on a sidewalk, plaintiff must introduce evidence sufficient to support findings that she fell and sustained injuries as the proximate result of a defect in or condition of the sidewalk, that the defect was of such nature and extent that a reasonable person, knowing of its existence, should have foreseen that it would likely cause injury, and that the city had actual or constructive notice of the existence of the defect for a sufficient time prior to the fall to remedy the defect or guard against injury therefrom.

**3. Same—**

Evidence tending to show that plaintiff fell when she stepped from the paved portion of a sidewalk to an unpaved portion thereof, on a dark

night, at a point at which the street lights failed to give appreciable light, that there was a declivity of some two inches at the end of the paved portion and a declivity of some three to five inches at a point 18 inches from the paved portion, and that the general condition of the sidewalk had existed for several years, *held* sufficient to be submitted to the jury on the issue of negligence of the municipality and not to show contributory negligence as a matter of law on the part of plaintiff.

**4. Negligence § 26—**

Nonsuit on the ground of contributory negligence is proper only when plaintiff's evidence, construed most favorably to her, establishes this defense so clearly that no other conclusion can reasonably be drawn therefrom.

**5. Municipal Corporations § 12—**

In an action by a pedestrian to recover for injuries from a fall on a sidewalk, evidence as to the location of the point of the fall with reference to the principal business district of the city and with reference to a store, and that the sidewalk at the site of the accident was heavily traveled both day and night, is competent, since it is relevant upon the frequency of inspection required of the municipality concerning the condition of the sidewalk at this point.

**6. Same—**

In an action by a pedestrian to recover for injuries from a fall on a sidewalk at a point where the paved portion of the sidewalk ended, evidence of the difference in levels between the paved portion and the unpaved portion at a point some 18 inches beyond the pavement is competent, even though plaintiff's evidence fails to show that she stepped the full 18 inches beyond the paved portion, since the condition of the sidewalk throughout the vicinity is competent upon the question of whether the condition was such as to put the city upon notice that injuries to a pedestrian using the walk at night could have been foreseen.

**7. Evidence § 35—**

It is competent for a non-expert to testify as to the declivity between the unpaved and paved portions of a sidewalk, ascertained by the witness by laying one measuring rule upon the surface of the pavement with its end projecting over the unpaved walk, and with another rule, measuring the distance from the under edge of the first rule down to the surface of the dirt, since such measurement requires no greater skill than that possessed by any intelligent adult, and the testimony relates to facts within the knowledge of the witness and not opinions or conclusions drawn by him from the facts.

APPEAL by defendant from *Cowper, J.,* at the October 1966 Civil Session of HALIFAX.

The plaintiff sues for damages on account of personal injuries alleged to have been received when she fell upon a public sidewalk maintained by the city. She alleges that her fall occurred as she walked at night upon the sidewalk, with which she was not familiar, at a point which was not lighted, and at which a paved por-

tion of the walk joined an unpaved portion thereof so as to cause a substantial drop-off or change of level. She further alleges that this constituted a dangerous defect in the walk, the existence of which reasonable diligence in inspecting its streets and sidewalks would have disclosed to the city, and that the city was negligent in failing to make such inspection, in failing to remove the dangerous condition, and in failing to provide adequate street lights, warning lights or protective devices, which negligence was the proximate cause of the plaintiff's fall and resulting injuries. In its answer the city denies any negligence by it and alleges, alternatively, that the plaintiff by the exercise of reasonable prudence and the keeping of a reasonable lookout could have seen the alleged defect in the sidewalk and that her own negligence was the sole proximate cause of her injuries.

Issues of negligence, contributory negligence and damages recoverable were submitted to the jury and answered in favor of the plaintiff. From judgment entered in accordance with the verdict, the city appeals, assigning as error the denial of its motion for judgment of nonsuit, and the admission, over its objection, of certain testimony offered by the plaintiff. Other exceptions taken by the defendant in the course of the trial have been abandoned, no argument being made or authority cited with reference thereto in the defendant's brief.

It was stipulated that the city had control over the sidewalk at the point where the plaintiff fell, which sidewalk ran upon the east side of Jackson Street throughout the length of the block between Ninth Street and Tenth Street.

The defendant offered no evidence. Evidence offered by the plaintiff with reference to the nature and extent of her injuries is not pertinent to any question presented by the defendant's appeal. Other evidence introduced by the plaintiff may be summarized as follows:

The plaintiff, 54 years of age at the time of her injury, had lived and worked in Roanoke Rapids for many years. Her several places of residence were in a different part of the city from that in which her fall occurred. Her place of employment was on Jackson Street, four blocks from the place where she fell. She does not remember ever having walked upon this sidewalk prior to this occasion.

On 15 February 1963, the plaintiff went to a beauty shop on Ninth Street. She remained there until 6:45 p.m., at which time it was dark. She walked along Ninth Street to the east side of Jackson Street and then turned south upon this sidewalk, intending to walk to the Colonial Store at Tenth and Jackson Streets. For 55 yards, approximately one-fourth of the block, the sidewalk was

paved and in good condition. The pavement then ended and for the next 63 yards the sidewalk was unpaved, its surface being broken by ruts and tree roots. Then the pavement began again and continued to the end of the block.

At the point where the first or northernmost paved portion of this sidewalk joined the unpaved portion there was a difference in level, the paved portion being the higher. The paved walk was five feet wide. At the immediate point of juncture between the paved and unpaved portions of the walk, the "drop-off" from the paved portion to the unpaved portion varied, approximately uniformly, from zero at the interior edge of the walk to two and three-quarters inches at the outer or street edge of the sidewalk. Proceeding southwardly, the dirt portion slanted downward for the next 18 inches so that, at that point, the difference in level between the paved and unpaved portions was three and three-quarters inches at the inside edge of the walk and five and three-quarters inches at the outside or street edge of the walk. Thus, immediately south of the juncture of the paved walk with the dirt walk, the dirt portion slanted both to the west and to the south; that is, both toward the plaintiff's right and in the direction of her travel as she stepped off the edge of the paved portion of the walk. This portion of the unpaved sidewalk was used as a driveway, giving access from the street into the rear yard of the adjoining church building.

As she stepped from the paved portion onto the uneven dirt portion of the walk, the plaintiff fell to the ground, sustaining severe injuries. She was walking in the middle of the sidewalk, carrying nothing in her hand save her pocketbook, and was wearing shoes with one-inch heels, such as she wore at her work. Her last step was straight ahead and she was not walking rapidly. She did not observe the change in the nature or level of the walk before she fell.

The night was dark, with no moon. There was no flare or other warning at the end of the pavement. There were no lights in the adjoining church. There was one street light on the other side of the street, near the middle of the block. The next closest street light was in the block behind the plaintiff. These street lights were 44 and 67 yards, respectively, from the place where the plaintiff fell, and neither of them cast any appreciable light upon the sidewalk at that point. A tree grew near the curb between the point of the fall and the street light to the south. Its exposed roots ran across the dirt sidewalk, just beyond the driveway. These roots did not contribute to the plaintiff's fall.

The sidewalk had been in this general condition for several years. Construction work upon an addition to the church throughout the preceding 12 months had caused a considerable amount of truck

passage from Jackson Street over the driveway across this dirt portion of the sidewalk where the plaintiff fell. This had caused additional wear upon and erosion of the driveway across the dirt portion of the sidewalk.

The main business district of the city is on Roanoke Avenue, which is one block from Jackson Street. Jackson Street is heavily traveled both day and night.

*Nicholas Long and Banzet & Banzet for defendant appellant.*

*Allsbrook, Benton, Knott, Allsbrook & Cranford for plaintiff appellee.*

LAKE, J. The basis upon which a city or town may be held liable for damages to a pedestrian injured by a fall while walking upon its sidewalk is thus stated by Parker, J., now C.J., speaking for the Court in *Smith v. Hickory*, 252 N.C. 316, 113 S.E. 2d 557:

> "The governing authorities of a town or city have the duty imposed upon them by law of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who use them in a proper manner. Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect in the street or sidewalk and the injury: he must also show that the officers of the town or city knew, or by ordinary diligence, might have known of the defect, and the character of the defect was such that injury to travellers using its street or sidewalk in a proper manner might reasonably be foreseen. Actual notice is not required. Notice of a dangerous condition in a street or sidewalk will be imputed to the town or city, if its officers should have discovered it in the exercise of due care."

To the same effect, see: *Mosseller v. Asheville*, 267 N.C. 104, 147 S.E. 2d 558; *Faw v. North Wilkesboro*, 253 N.C. 406, 117 S.E. 2d 14; *Gettys v. Marion*, 218 N.C. 266, 10 S.E. 2d 799; *Bailey v. Winston*, 157 N.C. 252, 72 S.E. 966; *Fitzgerald v. Concord*, 140 N.C. 110, 52 S.E. 309.

It is the duty of the city to exercise a reasonable and continuing supervision over its streets and sidewalks, including the inspection thereof in a manner and with a frequency reasonable in view of the location, nature and extent of the use of such street or walk. *Mosseller v. Asheville, supra; Revis v. Raleigh*, 150 N.C. 348, 63 S.E. 1049; *Jones v. Greensboro*, 124 N.C. 310, 32 S.E. 675. The city is, of course, charged with notice of any condition upon its side-

walks or streets which such an inspection would have disclosed to it. *Faw v. North Wilkesboro, supra.* However, it is not every defect or inequality in the level of a sidewalk which will render the city liable to a person who falls as a result thereof. *Watkins v. Raleigh,* 214 N.C. 644, 200 S.E. 424; *Houston v. Monroe,* 213 N.C. 788, 197 S.E. 571. The city is not liable for an injury sustained by such a fall unless a reasonable person, observing the defect prior to the accident, would have concluded that it was of such a nature and extent that, if it were allowed to continue, an injury to some person using the walk in a proper manner could reasonably be anticipated. *Mosseller v. Asheville, supra; Fitzgerald v. Concord, supra.* It is not sufficient to absolve the city that the condition be one not likely to cause injury in the daytime. The sidewalk must be reasonably safe for use at night under such light as the city provides, or causes to be provided. *Bunch v. Edenton,* 90 N.C. 431; McQuillin, Municipal Corporations, 3rd ed., § 54.12.

Proof that a condition, from the continuance of which a likelihood of injury to someone using the sidewalk in a proper manner might reasonably be foreseen, had existed for so long a time that inspection of the sidewalk at reasonable intervals would have brought it to the knowledge of the city fixes the city with notice of the existence of that condition. *Bailey v. Winston, supra; Fitzgerald v. Concord, supra.* Once the city has notice, actual or constructive, of the existence of such condition upon its sidewalk, it is not instantaneously subject to liability for subsequent falls, but the city must then act with due diligence and due care to remove the danger. *Mosseller v. Asheville, supra.*

To survive a motion for judgment of nonsuit, the plaintiff must introduce evidence sufficient to support these findings by the jury: (1) She fell and sustained injuries; (2) the proximate cause of the fall was a defect in or condition upon the sidewalk; (3) the defect was of such a nature and extent that a reasonable person, knowing of its existence, should have foreseen that if it continued some person using the sidewalk in a proper manner would be likely to be injured by reason of such condition; (4) the city had actual or constructive notice of the existence of the condition for a sufficient time prior to the plaintiff's fall to remedy the defect or guard against injury therefrom.

If the plaintiff's evidence, considered in the light most favorable to her, together with inferences in her favor which may reasonably be drawn therefrom, is sufficient to permit a finding of each of these things, the motion for judgment of nonsuit should be overruled, so far as the question of the city's negligence is concerned. So considered, the plaintiff's evidence in this record is sufficient to permit,

though not to require, the jury to find each of the above elements of the plaintiff's right to recover.

The motion for judgment of nonsuit could be sustained on the ground of contributory negligence by the plaintiff only if the plaintiff's evidence, construed most favorably to her, establishes so clearly that no other conclusion can reasonably be drawn therefrom that the plaintiff, as she walked upon this sidewalk, failed to exercise the care which a reasonable person would have exercised in so walking at that time and place. *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536. So considered, the plaintiff's evidence does not compel that conclusion. Consequently, there was no error in overruling the motion for judgment of nonsuit.

We are not to be understood as holding that there was a duty upon the city to pave the sidewalk in question or that a city is liable, as a matter of law, to one who, while walking upon an unlighted and unpaved sidewalk, falls as the result of an inequality in the level of the sidewalk surface. We hold only that in this instance the evidence is sufficient to permit the submission of the issues of negligence and contributory negligence to the jury under proper instructions as to the legal principles involved. They were so submitted and the jury answered them in favor of the plaintiff.

We find no merit in the defendant's exceptions to the admission of testimony by the plaintiff which located the point of the fall with reference to the principal business district of the city and with reference to the Colonial Store, or to the admission of the testimony by the plaintiff to the effect that Jackson Street was heavily traveled both day and night. Such testimony was relevant upon the question of the frequency of inspection required of the city concerning the condition of the sidewalk at this point.

The defendant's exceptions to the admission of testimony concerning the difference between the level of the paved walk from which the plaintiff stepped and the level of the dirt portion of the walk 18 inches beyond the end of the pavement are likewise without merit. While the plaintiff's testimony indicates that her last step forward did not carry her as far as 18 inches from the paved portion of the walk, the condition of the unpaved portion of the walk throughout this vicinity was competent upon the question of whether the condition of the sidewalk was such, in nature and extent, as to put the city upon notice that injury to one using the walk at night could be foreseen if this condition were allowed to remain.

There is also no merit in the city's exception to testimony by the plaintiff's witness as to the comparative levels of the paved portion of the walk and various points upon the unpaved portion of the

walk within 18 inches of the end of the pavement. The witness testified that he made these measurements by laying one measuring rule upon the surface of the pavement, its end projecting out over the unpaved walk, and, with another rule, measuring the distance from the under edge of the first rule down to the surface of the dirt sidewalk. One does not need to be an expert surveyor or engineer to make or to testify concerning such measurements. Any intelligent adult person could make them and in testifying thereto would be testifying as to facts, not stating opinions and conclusions drawn by him from the facts. The defendant could have, if it had seen fit, offered evidence in conflict with this testimony and the credibility of the witnesses would be for the jury to determine. These measurements required no greater skill than would any other measurements of distances and depth.

No error.

BRANCH, J., took no part in the consideration or decision of this case.