MRS. ALLIE MAE ROGERS v. THE CITY OF ASHEVILLE

No. 7228DC40

(Filed 24 May 1972)

1. **Municipal Corporations § 14— streets and sidewalks — duty of municipality**

The duty of a municipality to keep its streets and sidewalks in a reasonably safe condition implies the duty of reasonable inspection from time to time, including a duty to inspect manhole covers or any other device forming an integral part of the sidewalk over which pedestrians find it necessary or convenient to pass in the use of the streets.

2. **Municipal Corporations § 14 —streets and sidewalks — duty of municipality**

A municipal corporation is not an insurer of the safety of its streets and sidewalks.

3. **Municipal Corporations § 14— defective water meter cover — negligence — insufficiency of evidence**

Evidence tending to show that plaintiff sustained injuries when she stepped on the metal cover of a water meter built into a municipal sidewalk and the cover tilted and caused her to fall into the meter box, that the inside rim of the cover had rusted and corroded, that no defect was visible from the outside, and that adjacent buildings had been torn down, *is held* insufficient to permit a finding of negligence on the part of the municipality, there being no evidence that the condition of the water meter was in fact a defect, how long it might have existed, whether it might have reasonably caused the fall, or whether the municipality regularly inspected the meters and should have reasonably discovered the alleged defect.

APPEAL by defendant from *Winner, Judge,* 16 August 1971 Session of District Court, BUNCOMBE County.

Plaintiff instituted this action against the City of Asheville for damages for injuries sustained as a result of a fall on a city sidewalk. Plaintiff alleged that the city was negligent in maintaining the lid on a water meter box built into the sidewalk and that as a result of the city's negligence, she was injured when she stepped on the lid which tilted and caused her to fall into the meter box. Plaintiff filed a claim for damages with the city which was denied. She then instituted this action in District Court on 29 October 1970. The city denied any negligence on its part and averred that plaintiff was contributorily negligent in failing to keep a proper lookout to avoid visible dangers. Following a trial without a jury, judgment was entered awarding $1200 in damages for injuries proximately caused by defendant's negligence. Defendant appealed.

*James S. Howell for plaintiff appellee.*

*Williams, Morris and Golding, by J. N. Golding, for defendant appellant.*

MORRIS, Judge.

Plaintiff offered evidence which tended to show that on 17 April 1970 at about 9:45 a.m. she and her daughter walked to the courthouse by way of the sidewalk on the south side of College Street. It was misting rain, the sidewalk was wet, and the plaintiff and her daughter were sharing an umbrella. The sidewalk was concrete or cement, approximately eight to ten feet wide, and plaintiff had walked on this particular sidewalk many times before. Plaintiff had previously seen water meter boxes while walking on the sidewalk, but she had never fallen before. Plaintiff testified that "[T]here's a lot of meters along there because the old McIntyre Building had been torn down." On her way to the courthouse, plaintiff walked on or in close proximity to the place where she fell, but she did not notice anything wrong with any of the cement located adjacent to where the lid was. The lid was flush with the surface of the sidewalk, and she did not notice any rust on the surface of the lid. On her return from the courthouse, and as she approached the spot where she was injured, plaintiff did not notice anything unusual about the lid itself. The metal meter cover, approximately a foot to a foot and a half in diameter and made of cast iron, was still lying flush with the sidewalk. When plaintiff

stepped on the lid of the water meter box, it turned without warning, and her right leg went down in the hole full of muddy water. The lid pinned her leg, and she fell to the ground. After she fell, plaintiff then "observed that the lid was rusted and broken off, the rim that holds the lid" and "the rim on the concrete was cracked or broken." Plaintiff testified, "I could not see any rust anywhere on or near or about the lid until after I fell. . . . Before I was injured I at no time saw anything visibly wrong with the water meter lid or any of the sidewalk surrounding it."

The testimony of the plaintiff's daughter substantially corroborated that of her mother. She testified that: "Yes, I observed the cover of the meter box because I couldn't imagine what on earth had happened to her. I noticed that the inside rim had rusted and was corroded—as to the appearance of the rim, it was broken and corroded. . . . No, before my mother fell I did not notice anything wrong with the water meter lid or any of the sidewalk surrounding it."

The plaintiff also introduced evidence of the nature and extent of her injuries which is not pertinent to this appeal. At the close of plaintiff's case, rather than recall a witness, plaintiff's counsel requested a stipulation that the buildings adjacent to the sidewalk where the injury occurred had been torn down for some years. The trial court took judicial notice of that fact, and plaintiff rested. The City of Asheville declined to present any evidence. On appeal defendant excepts to the denial of its motion for involuntary dismissal in a nonjury trial under Rule 41(b) of the Rules of Civil Procedure. G.S. 1A-1.

> "In a nonjury case, in which all issues of fact are in any event to be determined by the judge, the function of the judge on a motion to dismiss under Rule 41(b) is to evaluate the evidence without any limitations as to the inferences which the court must indulge in favor of the plaintiff's evidence on a similar motion for a directed verdict in a jury case." *Bryant v. Kelly*, 10 N.C. App. 208, 213, 178 S.E. 2d 113 (1970), reversed on other grounds 279 N.C. 123, 181 S.E. 2d 438 (1971); *Wells v. Insurance Co.*, 10 N.C. App. 584, 179 S.E. 2d 806 (1971).

In passing upon a motion for a directed verdict under G.S. 1A-1, Rule 50, had this been a jury trial, " . . . all evidence

which supports plaintiff's claim must be taken as true and viewed in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in his favor. (Citation omitted.)" *Maness v. Construction Co.*, 10 N.C. App. 592, 595, 179 S.E. 2d 816 (1971), cert. denied 278 N.C. 522 (1971). Thus in this case, an action tried by the court without a jury, the court passed upon the weight and credibility of the plaintiff's evidence as recited above and ruled that the evidence was sufficient as a matter of law to permit recovery. See *Knitting, Inc. v. Yarn Co.*, 11 N.C. App. 162, 180 S.E. 2d 611 (1971). Our study of the evidence, viewed in the light most favorable to the plaintiff, leads us to the conclusion that there was not sufficient evidence of negligence on the part of defendant to establish a right to relief. Therefore, denial of defendant's motion for involuntary dismissal under Rule 41(b) was error.

[1] Plaintiff alleged that the defendant, a municipal corporation, was negligent in failing to maintain a sidewalk in a reasonably safe condition. The duty of a municipality to keep its streets and sidewalks in a reasonably safe condition implies the duty of reasonable inspection from time to time. *Radford v. Asheville, infra;* 5 Strong, N.C. Index 2d, Municipal Corporations, § 14, p. 641. "This duty applies to manhole covers, unloading chutes, coal chutes, or any other device forming an integral part of the sidewalk over which pedestrians find it necessary or convenient to pass in the use of the streets. (Citations omitted.)" *Radford v. Asheville,* 219 N.C. 185, 190, 13 S.E. 2d 256 (1941).

[2] A municipal corporation is not, however, an insurer of the safety of its streets and sidewalks.

> "Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of the defect in the street or sidewalk and the injury: he must also show that the officers of the town or city knew, or by ordinary diligence, might have known of the defect, and the character of the defect was such that injuries to travellers using its street or sidewalk in a proper manner might reasonably be foreseen. Actual notice is not required. Notice of a dangerous condition in a street or sidewalk will be imputed to the

town or city, if its officers should have discovered it in the exercise of due care. This principle is firmly established in our decisions. (Citations omitted.)" *Smith v. Hickory,* 252 N.C. 316, 318, 113 S.E. 2d 557 (1960).

In this case, plaintiff does not contend that defendant had actual notice. She does contend and had the burden of proving that the city had constructive notice of a defect in the water meter lid, i.e., that the defect had existed for such a length of time that the city should have discovered it in the exercise of reasonable inspection. See *Mosseller v. Asheville,* 267 N.C. 104, 147 S.E. 2d 558 (1966).

In a case involving a plaintiff who fell on the unpaved portion of a sidewalk at night our Supreme Court, through Justice Lake, said that:

"To survive a motion for judgment of nonsuit, the plaintiff must introduce evidence sufficient to support these findings by the jury: (1) She fell and sustained injuries; (2) the proximate cause of the fall was a defect in or condition upon the sidewalk; (3) the defect was of such a nature and extent that a reasonable person, knowing of its existence, should have foreseen that if it continued some person using the sidewalk in a proper manner would be likely to be injured by reason of such condition; (4) the city had actual or constructive notice of the existence of the condition for a sufficient time prior to the plaintiff's fall to remedy the defect or guard against injury therefrom." *Waters v. Roanoke Rapids,* 270 N.C. 43, 48, 153 S.E. 2d 783 (1967).

The evidence revealed by the record before us is insufficient to meet these requirements.

Several North Carolina cases are factually similar. *Bailey v. Asheville,* 180 N.C. 645, 105 S.E. 326 (1920); *Gasque v. Asheville,* 207 N.C. 821, 178 S.E. 848 (1935); *Gettys v. Marion,* 218 N.C. 266, 10 S.E. 2d 799 (1940); *Faw v. North Wilkesboro,* 253 N.C. 406, 117 S.E. 2d 14 (1960). In *Bailey, supra,* the plaintiff introduced evidence that the water meter box had been in place six to eight months; that an employee read the meter monthly; and the last time the meter was read was five days before the injury. The Court held that the evidence that the cover was insecurely fastened was sufficient to go to the

Rogers v. City of Asheville

jury. In *Gasque, supra,* the plaintiff didn't see the meter box cover at night, but there was evidence by several other persons that there was dirt in the flange causing the lid to rest unevenly; that this was the old style of meter that was being replaced; and that the city had meter readers. The Court held that this evidence, coupled with that of a city employee who termed the old style lid unsafe, was sufficient to go to the jury. In *Gettys,* the water meter was in a grass area between the sidewalk and the curb rather than in the sidewalk. There was no evidence that the cap was not properly placed, or that it was otherwise defective in construction or maintenance. Neither was there any evidence that the city had any notice, actual or constructive, of any alleged defect in its condition. The Court held that since *res ipsa loquitur* does not apply, the plaintiff's evidence was insufficient to survive a motion for nonsuit; that the defect, if any, was latent; and that plaintiff failed to show that it was discoverable. In *Faw,* the water meter box was in an alley under the city's control. There the plaintiff introduced evidence of her husband's opinion, based upon his examination shortly after the accident, that the cover didn't fit properly; and the testimony of an experienced plumber who tested the cover and found it to be worn and smaller in size than the rim, and thus not properly fitted. The Supreme Court reversed the trial court which had found insufficient facts to go to the jury.

[3] Plaintiff, in this nonjury trial, relies upon the inferences which may be drawn from her own testimony and that of her daughter to survive a motion by defendant for involuntary dismissal. Absent evidence to the contrary, the rusting away of the underside of a metal water meter cover might exist for a long period of time, even years, without discovery, despite the exercise of reasonable care by the defendant municipality. Plaintiff introduced no lay or expert testimony in an attempt to show that the condition of the water meter lid was in fact a defect, or how long it might have existed, or whether it might have reasonably caused the fall. It would have been a simple task for plaintiff to introduce some evidence to show whether the defendant municipality regularly inspected the meters and if they did, whether they should have reasonably discovered the alleged defect. See 19 McQuillin, Municipal Corporations, 3d ed., §§ 54.109-54.111, pp. 308-327, and 63 C.J.S., Municipal Corporations, §§ 827-831, pp. 166-172. The evidence of the

plaintiff that adjacent buildings had been torn down would perhaps support an inference that certain water meters had been abandoned. However, this inference, standing alone and not supported by any established facts, is insufficient to take this case out of the realm of conjecture and surmise. *Smith v. Hickory, supra.* There is plenary evidence to show that the defect, if any, was not visible to the plaintiff prior to her injury and thus supports the finding that she was not contributorily negligent. However, this evidence just as strongly indicates that the defect was no more visible to the municipality than it was to the plaintiff. Compare *Gower v. Raleigh,* 270 N.C. 149, 153 S.E. 2d 857 (1967).

The evidence of constructive notice, taken in the light most favorable to the plaintiff, was insufficient to permit a finding that the city by reasonable inspection should have known of the alleged latent defect. It follows then that the denial of defendant's motion for involuntary dismissal was erroneous.

Reversed.

Chief Judge MALLARD and Judge PARKER concur.