ELLA KLASSETTE v. LIGGETT DRUG COMPANY, INC., BLYTHE & ISENHOUR, CITY OF CHARLOTTE, COMMERCIAL NATIONAL BANK OF CHARLOTTE, EXECUTOR OF THE ESTATE OF E. L. BAXTER DAVIDSON, L. D. CHILDS, RICHARD A. CHILDS, MARGARET M. CHILDS AND JEANIE B. PHIFER.

(Filed 30 April, 1947.)

**1. Appeal and Error § 40i—**

Upon appeal from judgment as of nonsuit the evidence will be considered in the light most favorable to plaintiff.

**2. Negligence § 1—**

Negligence is the failure to perform some legal duty owed the injured party under the circumstances, which negligent breach of duty proximately causes injury.

**3. Negligence § 5—**

Proximate cause is that cause which produces the result in continuous sequence and without which it would not have occurred, under circumstances from which a man of ordinary prudence could have reasonably foreseen that such result was probable.

**4. Negligence § 19b (1)—**

If plaintiff's evidence fails to establish either negligence or proximate cause, nonsuit is proper.

**5. Negligence § 19a—**

Whether there is sufficient evidence to support the issue of negligence is a question of law.

**6. Municipal Corporations § 12—**

The maintenance of the fire department and the extinguishment of fires is a governmental function of a municipality, and, in the absence of statutory provision to the contrary, a municipality incurs no liability either for inadequacy of equipment or for negligence of its firemen.

**7. Municipal Corporations § 14a—**

A municipality is not an insurer of the safety of its streets and sidewalks but is required only to exercise ordinary care and due diligence to see that they are reasonably safe from dangers or defects which can or ought to be discovered in the exercise of ordinary care and prudence.

**8. Same—**

A municipality is not under duty to guard against wetness of a sidewalk from water flowing from a building in which its fire department had extinguished a fire, no more than it is under duty to guard against wetness due to rain.

**9. Same—**

Plaintiff's evidence tended to show that the sidewalk adjacent to a building in which a fire had occurred the previous day was wet from a liquid flowing beneath the door, that plaintiff saw the condition but nevertheless walked through it and slipped and fell to her injury. Plaintiff's evidence also tended to show that there was some colorless oil in the liquid which caused her to fall. *Held:* Plaintiff's evidence discloses that even if there was oil in the water, it was not visible, and therefore the evidence fails to show a hazard or danger which the officers of the city should have discovered in the exercise of due care.

**10. Negligence § 4a—**

Neither the owner nor lessee may be held liable by a pedestrian for hazardous condition existing upon adjacent sidewalk unless such condition is the result of negligence or nuisance which is the fault of the owner or lessee.

**11. Same—**

Plaintiff's evidence tended to show that the sidewalk adjacent to a building in which a fire had occurred the previous day was wet from a liquid flowing beneath the door, that plaintiff saw the condition but nevertheless walked through it and slipped and fell to her injury. Plaintiff's evidence also tended to show that there was some colorless oil in the liquid which caused her to fall. *Held:* Neither the owner of the building nor the lessee of the store in which the fire occurred may be held liable, since neither is responsible for a condition created by firemen in fighting the fire, and since if oil from the premises escaped into the water, there was no evidence that it was due to the fault of either of them.

**12. Same: Municipal Corporations § 14a—**

Plaintiff's evidence tended to show that the sidewalk adjacent to a building in which a fire had occurred the previous day was wet from a liquid flowing beneath the door, that plaintiff saw the condition but nevertheless walked through it because other pedestrians were walking along

the sidewalk at the place, and that she slipped and fell to her injury. Plaintiff's evidence also tended to show that there was some colorless oil in the liquid which caused her to fall. There was evidence that plaintiff had an alternate safe route to her destination. *Held:* Plaintiff is guilty of contributory negligence barring recovery.

APPEAL by plaintiff from *Patton, Special Judge,* at 24 February, 1947, Extra Regular Civil Term, of MECKLENBURG.

Civil action to recover damages for personal injury sustained in a fall on street sidewalk allegedly resulting from actionable negligence of defendants.

Plaintiff took voluntary nonsuit as to defendants Blythe & Isenhour.

These facts in respect to the subject of this action on the dates in question appear to be uncontroverted:

The individual defendants owned the building at the northeast corner of the intersection of Tryon and Trade streets in the city of Charlotte, North Carolina. The owners had leased in writing the ground floor, a part of the basement, and certain space on the second floor of said building to defendants Liggett Drug Company, who then occupied same. On early morning of 17 November, 1943, there was an intense fire in that part of the building so occupied by defendant Drug Company. The fire department of the city of Charlotte extinguished the fire by pumping water on it from three pumps for more than an hour each. The next morning, 18 November, about eleven o'clock, plaintiff slipped and fell as she was walking from the intersection of said streets along East Trade Street, in front of the building, and suffered injury.

Plaintiff alleges in her complaint: That that part of the building covered by the lease to defendant Liggett Drug Company was at the time of her injury in the joint possession and control of the defendants owners and defendant lessee; that "as a result of said fire, and especially as a result of the substance and liquid running out of said building, the sidewalk on East Trade Street adjoining said building became and remained in an oily, greasy and slippery condition," thereby becoming and re-maining "in a dangerous and unsafe condition," by reason of which she fell and was injured.

· Plaintiff also alleges that the defendants owners and defendant lessee were guilty of negligence in that: "(a) They caused and allowed said greasy and oily substances and liquids to escape from said building and run out to, and spread over, the sidewalk on East Trade Street adjoining said building. (b) Thereafter they allowed said substances and liquids to remain on said sidewalk, although they rendered said sidewalk in an unsafe and dangerous condition. (c) Thereafter they took no measures to remedy the dangerous and unsafe condition of said sidewalk, or to guard against the risks and dangers arising from the risks of said greasy

and oily substances and liquids thereon. (d) They failed to take any precautions, or to notify persons attempting to use said sidewalk of the dangerous and unsafe condition thereof."

Plaintiff further alleges that "defendant city of Charlotte was guilty of negligence in that it allowed said sidewalk to become and remain in said slippery, unsafe and dangerous condition without taking any steps to remedy same, or to give notice of said condition to persons attempting to use said sidewalk.

Plaintiff further alleges that "as a proximate result of the negligence of the defendants hereinbefore alleged, the plaintiff received severe, painful and permanent injuries, etc."

Defendants owners, lessee and city, severally answering, deny in material aspect the foregoing allegations of the complaint, and severally plead the contributory negligence of plaintiff in bar of her recovery in this action.

Plaintiff offered evidence tending to show these facts pertaining to the scene of her fall and injury: The intersection of Tryon Street, which runs generally north and south, and Trade Street, which runs east and west, is known as the Square in the city of Charlotte. The Liggett Drug Company building is on the northeast corner of the Square, with frontage on both Tryon and Trade Streets. The sidewalk on the north side of Trade Street where plaintiff fell "coming from the Square toward Belk's is slanting . . . down hill," and is fairly wide.

Plaintiff, as witness for herself, testified in pertinent part: "On November 18, 1943, I had a fall up there on the sidewalk on Trade Street next to the Liggett Drug Company building. I was up town shopping . . . walking down Trade toward Belk's from Tryon . . . going east on Trade . . . this side of where the Duke Power Company had their offices down stairs, and there is also a flight of steps there. Well, I fell this side of the steps and . . . of the Duke Power Company's office down in the basement of Liggett's . . . my right foot slipped . . . It was a clear sunny day . . . about 11:15 or 11:20 . . . I noticed that the sidewalk was wet because every one was walking along there, and that's the reason I was walking along there because it was wet and I didn't have anywhere else to walk. It was wet all along there. There was something coming out of the building. It was running out from under the doors of the building down the steps on to the hill. Before I fell I did not notice that there was any substance there other than water, because I saw everyone else was walking along there . . . I had gotten past the front door of Liggett's when I fell . . . about to the rear of the store if I remember correctly . . . When I fell I got some of the dampness or wet or moisture on my clothes . . . I was dismissed from the hospital about 3 o'clock, but I had to be taken home in an ambulance . . . My husband . . . got in touch with my mother . . . she got there

between three and three thirty . . . I had on the same clothes that I had on when I fell. She helped me remove them . . . With respect to pedestrian travel at this place where I fell, that is a congested part of the city. It was just a few feet from the Square that I fell . . . I know that the place where I fell was wet. At the time I fell I did not make any examination to see whether there was anything there besides water. Later on I made some examination of my clothes that I had on at the time I fell. That was when I undressed after I was taken home. The clothes were then in the same condition as they were right after I fell. On that examination I found that they were greasy. They had a greasy substance on them, something which made it impossible for me to use them any more."

Then on cross-examination, plaintiff testified: ". . . I got uptown . . . around 10 o'clock. I had been shopping . . . and I was starting down there to Belk's. I wasn't uptown on the 17th of November. On the 18th . . . in going on to the Square I passed right in front of Liggett's on Tryon Street. The sidewalk on Tryon Street was not blocked when I passed there on the morning of the 18th. I observed that there had been a fire there. The glass front on the Tryon Street side of Liggett's was all broken out and the door to Liggett's Drug Store, which door was at the corner of Tryon and Trade, was broken out. I passed that door in turning the corner to go down to Belk's. There was something running under that door. The frame of the door was still there. The glass was gone . . . there were a whole lot of people there. I was sort of outside to the sidewalk and there were a whole lot of people between me and the building . . . looking in . . . themselves. I noticed the wall was blackened from fire and that there had been a bad fire there. I could see that the interior of the building was blackened and burned out. I do not know what was coming under the door, but it was something in liquid form. It was running down the hill. It was going down those steps on to the sidewalk. I had to walk through it. I didn't know how deep it was but all I know is it made the sidewalk wet. There was none of that liquid on Tryon Street. If I had been going that way I could have crossed Trade over to Kress's. There wasn't anything to keep me from crossing Trade. There is a sidewalk on the first block of East Trade between Tryon and College on the south side of Trade, that is, on the opposite side from Belk's. I could have gone across Trade and down to College Street and up to Belk's without walking through the water, but you see I saw everyone else walking along there so I thought it was safe—but I didn't—when I passed the door at the entrance at Liggett's . . . I wasn't walking fast. I did not slow down . . . I just kept walking." To each of these questions, "Now you walked right through the water or liquid or whatever it was, coming out of the drug store? . . . And continued to walk right on down the sidewalk?" she answered, "Yes, sir."

Then, continuing, the plaintiff testified: "I was thoroughly familiar with that corner. I had been by there hundreds of times. I know where the Duke Power Company bus headquarters was in the basement of the Liggett building. That was down toward the rear end of the Liggett building and below the Liggett building, there was a stairway running up between that building and Smith's jewelry store. I had not passed the Duke Power Company when I fell . . . this side of the flight of steps . . ." The witness testified to the effect that the liquid coming out of the front door of Liggett's flowed down the sidewalk as far as the Duke Power Company office. Then she was asked these questions, to which she answered as shown: Q. "In other words, you walked in this liquid all the way from the corner down to where you fell?" A. "That's right, it was slick all the way down that hill." Q. "It was slick all down that hill?" A. "Don't get me wrong. I don't mean it was slick where I was walking, but it was wet all along there, because that's the reason I walked in it." Then in describing her shoes she said "the bottom of the shoe is flat and the heel is above the sole," and that she "walked through this water or liquid all the way from the corner down to where" she fell "with that flat type of shoe on."

The witness E. I. Sinkoe testified that he first saw the stock about a week, probably, or something like that, after the fire . . . At the time . . . there were some broken bottles in the building.

Plaintiff, being recalled, testified further as follows: "The sidewalk there by the side of Liggett's Drug Store stayed the same from the time I fell to the time my husband got there and on up to the time I was taken away." Then, under cross-examination, she continued: "During all that time (from time she fell until she was taken to hospital) there was a constant stream of people walking along that sidewalk. I think buses were loading and unloading there. People were getting on and off buses up there at the corner. Traffic was crowded on the sidewalk. I was looking down at the sidewalk all the time because it was wet, and I was wondering where I could walk to get out of the water . . . I was looking at the sidewalk as I was walking down and fell and also as I was coming down the street before I fell . . ." Then on re-direct examination, she testified: "I would say it was approximately ten minutes from the time I fell to the time my husband got there. No substance had come on to that sidewalk except out of the building during that ten minutes."

James A. Klassette, husband of plaintiff, testified: "I received word about my wife being hurt on November 18, 1943. I found my wife in front of steps leading upstairs, not the steps down to Duke Power . . . sitting in a chair . . . I walked up to Trade Street, on across the Square, and there the whole sidewalk was wet . . . water wasn't just pouring all over the sidewalk . . . there was a stream coming out of the building.

That stream didn't run straight; it ran and spread. Now it didn't cover the whole sidewalk at that time . . . The same substance was coming out of the building. I wouldn't say it was water. I wouldn't say what it was, but ordinarily speaking, I would say it was water, but there was a good stream of liquid coming out of the building . . . as I stepped back up off the street onto the curb my foot slipped. I did not fall. I then made an examination with my fingers of the substance that was there . . . I put my hand on my shoe. Of course you couldn't see oil in the water, because I was looking at it. I had seen enough of it not to see oil . . . Well, I flicked my fingers over my shoe. I got a greasy substance. It was clear, there was nothing discoloring about it." Then, on cross-examination, the witness continued: ". . . I am familiar with the Liggett corner. The sidewalk at the point where my wife fell is a very heavily traveled sidewalk. It and the opposite corner are probably the heaviest traveled points in Charlotte. The Duke Power buses all stop alongside there. At that time the buses . . . stopped there. Passengers are taken on and discharged there . . . there was a continuous stream of people walking along the sidewalk at the time this happened . . . They have spots of grease there where those Duke Power Company buses stop . . . I don't know where the grease on my shoes came from unless it came out of the building . . . It was not a Duke Power Company grease. A Duke Power grease will show black, absolutely. This was just a greasy, colorless substance . . . I said colorless . . . I didn't know until then that there was any oil in the water. I couldn't see it, it was colorless. I couldn't tell by looking at it whether there was grease in the water or not. I did by feeling it. I felt the bottom of my shoe. I had just stepped from the street onto the sidewalk. The place. where I crossed that sidewalk and where I stepped was not the point where my wife fell."

The court sustained motion for judgment as of nonsuit made at the close of plaintiff's evidence. From judgment in accordance therewith, plaintiff appeals to the Supreme Court and assigns error.

*Arthur Goodman, G. T. Carswell, and Robinson & Jones for plaintiff, appellant.*

*Goebel Porter and Frank H. Kennedy for Individual Owners, defendants, appellees.*

*John D. Shaw for City of Charlotte, appellee.*

*P. W. Garland and Helms & Mulliss for Liggett Drug Company, appellee.*

WINBORNE, J. The situation here is not unlike those in the cases of *Houston v. Monroe,* 213 N. C., 788, 197 S. E., 571, and *Watkins v.*

*Raleigh,* 214 N. C., 644, 200 S. E., 424, wherein this Court held that demurrer to the evidence was sustainable "if not upon the principal question of liability, then upon the ground of contributory negligence."

We are of opinion, however, that the evidence shown in the record on this appeal taken in the light most favorable to plaintiff, as the Court does in passing upon an exception to a judgment as of nonsuit, fails to make out a case of actionable negligence, in accordance with ruling of the learned judge who presided at the trial.

In an action for the recovery of damages for injury allegedly resulting from actionable negligence the plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Murray v. R. R.,* 218 N. C., 392, 11 S. E. (2d), 326; *Mitchell v. Melts,* 220 N. C., 793, 18 S. E. (2d), 406, and numerous cases therein cited.

If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. Whether there is enough evidence to support a material issue, such as negligence, is a matter of law. *Mills v. Moore,* 219 N. C., 25, 12 S. E. (2d), 661.

Guided by these principles, we proceed to consider the factual situation in hand.

I. As the facts relate to the city of Charlotte, these principles of law are applicable:

First: A fire department, maintained by a municipal corporation, belongs to the public or governmental branch of the municipality. And the courts almost uniformly hold, in the absence of statutory provision to the contrary, that the municipal corporation is immune from liability for injury or damage resulting from negligent acts of omission or commission in connection with the maintenance and operation of a fire department. Hence, the extinguishment of fires is a function which a municipal corporation undertakes in its governmental capacity, and in connection with which, in the absence of statutory provision to the contrary, it incurs no liability, either for inadequacy of equipment or for the negligence of its firemen. See 37 Am. Jur., 699, 38 Am. Jur., 322, Annotations; 9 A. L. R., 143, 84 A. L. R., 514; *Peterson v. Wilmington,* 130 N. C., 76, 40 S. E., 853, 56 L. R. A., 959, 11 Am. Neg. Rep., 332; *Howland v. Asheville,* 174 N. C., 749, 94 S. E., 524, L. R. A., 1918 B, 728; *Mabe v. Winston-Salem,* 190 N. C., 486, 130 S. E., 169.

If the law were otherwise, the evidence here reveals nothing unusual in the manner of operation by the fire department in extinguishing the fire in the drug store building, except that a large volume of water was required to do the job, and the fire damage was great.

Second: While plaintiff concedes that the city, in extinguishing the fire, was engaged in a governmental function, and that no negligence is predicated thereon, she contends that the evidence is sufficient for the jury to find that the city breached its duty in respect to the maintenance of its sidewalks in a reasonably safe condition for use in proper manner by pedestrians.

In this connection, a municipality is not held to the liability of an insurer of the safety of its streets, but only to the exercise of ordinary care and due diligence to see that they are reasonably safe for travel. See *Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 141, where numerous other cases are cited. See also *Houston v. Monroe, supra,* and *Watkins v. Raleigh, supra.* Hence, a municipality is not an insurer of the safety of persons using its sidewalks, and is liable only for negligence. *Gasque v. Asheville,* 207 N. C., 821, 178 S. E., 848.

Moreover, it is only against danger which can or ought to be anticipated in the exercise of ordinary care and prudence, that a municipality is bound to guard. *Watkins v. Raleigh, supra.* The principle, firmly established in our decisions, is clearly stated by *Adams, J.,* in *Markham v. Improvement Co. and City of Durham,* 201 N. C., 117, 158 S. E., 852, in these words: "The law imposes upon the governing authorities of a city or town the duty of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who may have occasion to use them in proper manner. Such authorities are liable only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect and the occurrence of an injury; he must show that the officers of the city knew, or by ordinary diligence might have known of the defect. But actual notice is not required. Notice of a dangerous condition in a street may be implied, and indeed will be imputed to the city or town if its officers should have discovered it in the exercise of due care," citing cases. See also *Walker v. Wilson,* 222 N. C., 66, 21 S. E. (2d), 817.

Applying this principle to the case in hand, the evidence fails to show any breach of duty by the city in maintaining its sidewalks in a reasonably safe condition for those who may have had occasion to use them in proper manner. The act of pumping water into the building to extinguish the fire was an integral part of the performance of the functions of the fire department, and any damage done by the water was in the exercise of a governmental function. Moreover, the flowing of water out of the building on to the sidewalk is not evidence of negligence. Sidewalks are exposed to the elements, and, ordinarily, the fact that they

are wet by rain water would not create a danger against which the city would be expected to guard. Hence, in the exercise of ordinary care and prudence, injury from water on a sidewalk may not be anticipated, or reasonably foreseen.

Moreover, in the instant case, it is not contended that oil was in the water as it was pumped into the building or in the chemicals used in extinguishing the fire, and there is no evidence that there were any oils in the Liggett Drug Store building. While there is evidence that a week after the fire there were some broken bottles in the store, there is no evidence, or facts from which a reasonable inference may be had, as to what these bottles contained. Indeed, if oil were in the water as it flowed out of the building, the evidence indicates that it was not visible to the eye. Plaintiff's evidence is that it was colorless. But if the evidence be such that it may be inferred that oil was in the water, as it flowed out of the building, there is no evidence that the city was aware of it, or that the circumstances were such that the officers of the city should have discovered it in the exercise of due care, or that the city had implied notice of it.

II. As the facts relate to defendants owners and lessee of the Liggett Drug Store building: Irrespective of their liabilities *inter sese,* or respectively, and in so far as pedestrians are concerned, any liability of owner, or of occupant of abutting property for hazardous condition existent upon adjacent sidewalk is limited to conditions created or maintained by him, and must be predicated upon his negligence in that respect. Moreover, an owner, or an occupant is liable, if at all, for damage caused by the escape of substances from the premises only where some fault can be attributed to him. The owner, or the occupant, is not liable for injuries caused others in the absence of proof of negligence, unless he is shown to have created a nuisance. See 38 Am. Jur., 800-801. Negligence, Sec. 139.

Applying these principles to present case: There is no evidence that the fire in the building was caused by the negligence of the owners or of the occupant. And the conditions resulting from extinguishing the fire were brought about by the city in the exercise of a governmental function, over which the owners, or the occupant had no control, and for which they, or it, may not be held responsible. If oil from the drug store escaped in the water, the evidence fails to show that it was due to any fault on the part of the owners or of the occupant.

III. As to contributory negligence: It is seen from the evidence that plaintiff saw and knew as much about the condition of the sidewalk as anyone else. If she could not see oil in the water, it is fair to assume that officials of the city in the exercise of ordinary care could not see it. If they in the exercise of ordinary care could have seen it, she should have seen it in the exercise of ordinary care for her own safety. More-

over, the evidence tends to show that there was a safe way for her to travel, but she elected to take the short route and walk on the wet sidewalk. Under these circumstances, her conduct bars her recovery.

However, as we view the entire evidence, plaintiff's fall is just one of those events which sometimes occur without one's foresight or expectation, and therefore not anticipated, the consequences of which must be borne by the unfortunate sufferer. *Simpson v. R. R.,* 154 N. C., 51, 69 S. E., 683.

Other exceptions have been considered, and fail to show prejudicial error.

The judgment below is
Affirmed.