# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

RALEIGH

LOIS EDMONDSON BYNUM, INDIVIDUALLY, AND LOIS EDMONDSON BYNUM,
ADMINISTRATRIX OF THE ESTATE OF JAMES EARL BYNUM AND LOIS MARIE BYNUM, PLAINTIFFS
v.
WILSON COUNTY AND SLEEPY HOLLOW DEVELOPMENT COMPANY, DEFENDANTS

No. COA12-779

Filed 18 June 2013

1. **Appeal and Error—interlocutory orders and appeals—non-immunity related issues**

    The only issue properly before the Court of Appeals involved the correctness of the trial court's decision to deny defendant Wilson County's request for summary judgment in its favor on immunity-related grounds. Defendant Wilson County's attempted appeal from that portion of the trial court's order addressing non-immunity-related issues and granting plaintiffs' motion to dismiss defendant Sleepy Hollow's appeal in its entirety were taken from an unappealable interlocutory order.

2. **Immunity—governmental—proprietary operation of water system—injured when leaving government building**

    The trial court did not err by denying defendant Wilson County's motion for summary judgment based on governmental immunity grounds. The operation of a water system is a proprietary rather than a governmental function, plaintiff Mr. Bynum was lawfully on the pertinent premises for the purpose of paying his water bill, and Mr. Bynum allegedly sustained injuries as the result of negligence on the part of defendant Wilson County as he left the building after paying his water bill.

1

Appeal by defendants from order entered 19 March 2012 by Judge Milton F. Fitch in Wilson County Superior Court. Heard in the Court of Appeals 7 January 2013.

*Thomas & Farris, PA, by Albert S. Thomas, Jr., and Kurt Schmidt; and Narron & Holdford, PA, by Ben L. Eagles, for Plaintiff-appellees.*

*Teague Campbell Dennis & Gorham, L.L.P., by Carrie E. Meigs and Leslie P. Lasher, for Defendant-appellants.*

ERVIN, Judge.

Defendants Wilson County and Sleepy Hollow Development Company appeal from an order denying their motions for summary judgment with respect to the claims advanced against them by Plaintiff Lois Bynum, both individually and as administratrix of the estate of James Earl Bynum. On appeal, Defendant Wilson County argues that its appeal from the trial court's order denying its motion for summary judgment on governmental immunity grounds, although interlocutory, is properly before us and that it is entitled to immunity from suit in this case on the grounds that "operating and maintaining a county office building is a governmental function." In addition, Defendants argue that, in order to "avoid a fragmentary appeal," we should reach the merits of their non-immunity based challenges to the trial court's order, which rest on assertions that the evidentiary forecast presented to the trial court did not support a finding of negligence-based liability. After careful consideration of Defendants' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court did not err by denying Defendant Wilson County's motion for summary judgment based on governmental immunity grounds and that we should decline to reach Defendants' other challenges to the trial court's order. As a result, we affirm the trial court's order in part and dismiss Defendants' appeals in part.

## I.  Factual Background

### A.  Substantive Facts

The factual basis underlying Plaintiffs' claims, to the extent that it is relevant to the issue properly before us at this time, was set out in our prior opinion in *Bynum v. Wilson County*, __ N.C. App. __, 716 S.E.2d 90, 2011 N.C. App. LEXIS 1964, [WL cite] (2011) (unpublished) (*Bynum I*), in which we stated that:

**BYNUM v. WILSON CNTY.**

[228 N.C. App. 1 (2013)]

In January 2007, Defendant Wilson County moved its main office building to 2201 South Miller Road in Wilson. Wilson County leased the building in question from Defendant Sleepy Hollow Development Company. . . .

On 15 April 2008, Plaintiffs James Earl Bynum and his wife, Lois Marie Bynum, drove to the Wilson County office building, in which the offices of Wilson County's water department were located, for the purpose of paying their water bill. Since Plaintiffs usually paid their water bill in person, they had visited the building on approximately thirteen previous occasions. While Mr. Bynum entered the building to pay the water bill, Mrs. Bynum remained in their car.

After climbing the front exterior steps, Mr. Bynum entered the building and . . . paid the couple's water bill. After . . . exiting the building, Mr. Bynum started down the front exterior stairs in order to return to the car where Mrs. Bynum was waiting. Approximately two-thirds of the way down the stairs, Mr. Bynum fell and sustained serious injuries.

*Id.*, 2011 N.C. App. LEXIS 1964, at *1-*3, [WL cite at ___].

## B. Procedural History

We also addressed the procedural history of this case in *Bynum I*, in which we stated that:

On 9 December 2008, Mr. Bynum filed a complaint in which he alleged that he had been injured as the result of Wilson County's negligence. On 2 January 2009, Wilson County filed an answer in which it denied the material allegations of Mr. Bynum's complaint and asserted a number of affirmative defenses, including a contention that Mr. Bynum's claims were barred by the doctrine of governmental immunity. On 30 July 2009, Plaintiffs filed an amended complaint in which they claimed to have been injured as the result of negligence on the part of Wilson County and Sleepy Hollow.

On 3 June 2010, Defendants sought summary judgment. On 14 October 2010, the trial court entered an order denying Defendants' summary judgment motions. Defendants noted an appeal to this Court from the trial court's order.

**BYNUM v. WILSON CNTY.**

[228 N.C. App. 1 (2013)]

*Bynum I*, 2011 N.C. App. LEXIS 1964, at *4, [WL cite at __]. As a result of the fact that Mr. Bynum died on 27 January 2011, Plaintiffs sought leave of court to substitute Mrs. Bynum, in her capacity as administratrix of Mr. Bynum's estate, for Mr. Bynum as a party plaintiff on 31 March 2011. This Court allowed the substitution motion on 15 April 2011. *Id.*

In *Bynum I*, we held that Defendant Wilson County's challenge to the denial of its summary judgment motion predicated on governmental immunity grounds affected a substantial right and was properly before us despite the interlocutory nature of the trial court's order. On the other hand, we held that Defendant Sleepy Hollow's appeal and Defendant Wilson County's challenge to the trial court's refusal to grant summary judgment in its favor with respect to more traditional liability-based issues involved a request for appellate review of an interlocutory order; that Defendants had not articulated any substantial right that would be jeopardized by a failure on our part to consider their non-immunity-related challenges to the trial court's order on an interlocutory basis; and that those portions of Defendants' appeals should be dismissed. After reaching the merits of Defendant Wilson County's challenge to the trial court's rejection of its governmental immunity defense, we observed that Defendant Wilson County had mistakenly submitted a different insurance policy from the one in effect at the time of Mr. Bynum's accident for consideration at the summary judgment hearing, refused to grant Defendant Wilson County's request that we permit the proper insurance policy to be substituted for the one that had been presented to the trial court, and allowed Defendant Wilson County's alternative motion to dismiss its appeal. As a result,

> we h[e]ld that, with the exception of Wilson County's challenge to the trial court's refusal to grant summary judgment in its favor on governmental immunity grounds, Defendants' appeal . . . is dismissed as having been taken from an unappealable interlocutory order. In addition, . . . we deny Defendants' request that we allow an amendment to the record on appeal to include what Defendants claim to be the correct insuring agreement. Finally, we deny Defendants' request that this case be remanded to the trial court subject to certain instructions and allow Defendants' alternative motion for leave to withdraw their appeal.

*Bynum I*, 2011 N.C. App. LEXIS 1964, at *17 [WL cite at __].

BYNUM v. WILSON CNTY.

[228 N.C. App. 1 (2013)]

On 23 December 2011, Plaintiffs filed a motion seeking leave to amend their complaint in order to assert a wrongful death claim.[1] On 16 February 2012, Defendants filed motions seeking the entry of summary judgment in their favor. On 19 March 2012, the trial court entered an order denying Defendants' summary judgment motions. Defendants noted an appeal to this Court from the trial court's order. On 13 July 2012, Plaintiffs filed a motion to dismiss Defendant Sleepy Hollow's appeal as having been taken from an unappealable interlocutory order.

## II. Legal Analysis

### A. Scope of Appeal

[1] As a preliminary matter, we must identify the issues that are properly before us for appellate review. As was the case in *Bynum I*, Defendant Wilson County asserts, among other things, that the trial court erred by denying its motion for summary judgment based upon governmental immunity considerations. "This Court has held that appeals from interlocutory orders raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review." *Williams v. Devere Constr. Co., Inc.*, __ N.C. App __, __, 716 S.E.2d 21, 25 (2011) (citing *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999) (other citations omitted). As a result, Defendant Wilson County's challenge to the trial court's refusal to enter summary judgment in its favor on governmental immunity grounds is properly before us.

In addition, Defendants have also sought immediate review of the trial court's decision not to resolve Defendant Wilson County's non-immunity-related challenges and Defendant Sleepy Hollow's challenges to the trial court's order in their favor by denying Defendants' motion for summary judgment concerning these issues.[2] Defendants have not, however, articulated any substantial right that would be lost in the absence of immediate appellate consideration of these additional challenges to the trial court's order in their brief and we decline, as a general proposition, to sift through the record for the purpose of determining

---

1. Although the record does not contain an order allowing Plaintiffs' amendment motion, we gather from the contents of the parties' briefs that such an order was, in fact, entered.

2. The non-immunity-related claims asserted in Defendants' summary judgment motions consisted of claims that the evidentiary forecast presented to the trial court did not permit a finding that Mr. Bynum's injuries resulted from any negligence on the part of Defendants and that Plaintiffs' claims were barred by Mr. Bynum's contributory negligence.

whether a particular trial court order does, in fact, affect a substantial right. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (stating that "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order" and that "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits") (citations omitted). Although Defendant Sleepy Hollow's response to Plaintiffs' dismissal motion suggests that a failure to consider Defendants' non-immunity-related claims might create a risk of inconsistent verdicts, *Hartman v. Walkertown Shopping Center, Inc.*, 113 N.C. App. 632, 634, 439 S.E.2d 787, 789 (stating that, where "dismissal of this appeal as interlocutory could still result in two different trials on the same issues, creating the risk of inconsistent verdicts, a substantial right is prejudiced"), *disc. review denied*, 336 N.C. 780, 447 S.E.2d 422 (1994), we see no such risk in the event that we decide the issues arising from Defendant Wilson County's assertion of governmental immunity without addressing the other issues that Defendants seek to have us consider. As a result, consistently with our decision in *Bynum I*, we conclude that Defendants are "not entitled to obtain appellate review of the trial court's decision to refrain from granting summary judgment in [their] favor on the basis of any non-immunity-related argument and dismiss those portions of [their] appeal that rely on such non-immunity-related issues." *Bynum I*, 2011 N.C. App. LEXIS 1964, at *8 n.3 [WL cite at __].

In attempting to persuade us to reach the merits of their non-immunity-related challenges to the trial court's order, Defendants note that this Court has, on occasion, addressed additional issues that have been presented for our consideration in an appeal that arose from a trial court decision concerning immunity-related issues. For example, Defendants cite *RPR & Assocs. v. State*, 139 N.C. App. 525, 530-32, 534 S.E.2d 247, 251-53 (2000), *aff'd*, 353 N.C. 362; 543 S.E.2d 480 (2001), in which we addressed a service of process argument, and *Colombo v. Dorrity*, 115 N.C. App. 81, 84, 86, 443 S.E.2d 752, 755, 756, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 517 (1994), in which we addressed a statute of limitations issue. Although we held in these two instances that, given the specific factual and procedural contexts from which these cases arose, it would promote judicial economy to resolve these relatively clear-cut non-immunity-related issues in the same opinion in which we addressed the defendants' immunity-related arguments, we did not hold in either case that non-immunity-related issues would always be considered on the merits in the course of deciding an immunity-related interlocutory

**BYNUM v. WILSON CNTY.**

[228 N.C. App. 1 (2013)]

appeal or recognize the existence of a substantial right to have multiple issues addressed in the course of an immunity-related appeal. On the contrary, in most immunity-related interlocutory appeals, we have declined requests that we consider additional non-immunity-related issues on the merits. *See, e.g., Green v. Kearney,* 203 N.C. App. 260, 266, 690 S.E.2d 755, 764-65 (2010) (reviewing a defendant's challenge to the denial of an immunity-related dismissal motion on the merits while dismissing the remainder of the defendant's appeal as having been taken from an unappealable interlocutory order); *Meherrin Indian Tribe v. Lewis,* 197 N.C. App. 380, 384-85, 677 S.E.2d 203, 207-08 (2009) (reviewing the defendant's challenge to the trial court's immunity-related decision on the merits while dismissing the remainder of the defendant's appeal), *disc. review denied,* 363 N.C. 806, 690 S.E.2d 705 (2010). As we noted in *Boyd v. Robeson Cty.,* 169 N.C. App. 460, 464-65, 621 S.E.2d 1, 4, *disc. review denied,* 359 N.C. 629, 615 S.E.2d 866 (2005):

> [T]he question of whether a governmental entity is a "person" under [42 U.S.C.] § 1983 is analogous to the public duty doctrine and claims of immunity and, therefore, hold that it involves a substantial right permitting an interlocutory appeal.
>
> Defendants have, however, also [raised other arguments] on appeal[.] . . . Since these arguments do not involve any claim of immunity and defendants have made no other showing as to how this aspect of the trial court's ruling affected a substantial right, we decline to address these arguments and dismiss this portion of defendants' appeal.

(citing *Jeffreys,* 115 N.C. App. at 380, 444 S.E.2d at 254). Thus, we conclude, as we did in *Bynum I,* that the only issue properly before us at this time is the correctness of the trial court's decision to deny Defendant Wilson County's request for summary judgment in its favor on immunity-related grounds. For that reason, we dismiss Defendant Wilson County's attempted appeal from that portion of the trial court's order addressing non-immunity-related issues and grant Plaintiffs' motion to dismiss Sleepy Hollow's appeal in its entirety as having been taken from an unappealable interlocutory order.[3]

---

3. Although the record indicates that the trial court certified the order at issue in this case for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), Defendants have correctly refrained from relying on that certification in support of their request for immediate review of their non-immunity-related claims given that the trial court's order did not constitute a final resolution of any specific claim or of all claims relating to any specific party.

### B. Standard of Review

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. [Gen. Stat.] § 1A-1, Rule 56(c) (2012). " 'When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). The moving party has the burden "to show the lack of a triable issue of fact and to show that he is entitled to judgment as a matter of law." *Moore v. Crumpton*, 306 N.C. 618, 624, 295 S.E.2d 436, 441 (1982) (citing *Oestreicher v. Stores*, 290 N.C. 118, 131, 225 S.E.2d 797, 806 (1976)). "The showing required for summary judgment may be accomplished by proving [that] an essential element of the opposing party's claim . . . would be barred by an affirmative defense," *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citing *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 21, 423 S.E.2d 444, 454 (1992)), such as governmental immunity. "Our standard of review of a trial court's order granting or denying summary judgment is *de novo*." *Bryson v. Coastal Plain League, LLC*, __ N.C. App __, __, 729 S.E.2d 107, 109 (2012) (citing *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Craig*, 363 N.C. at 337, 678 S.E.2d at 354 (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (internal citation omitted).

### C. Availability of Governmental Immunity

[2] In its brief, Defendant Wilson County argues that the trial court erroneously failed to enter summary judgment in its favor on immunity-related grounds given that the "alleged causes of Decedent's injuries include governmental functions which were performed by Wilson County[.]" More specifically, Defendant Wilson County contends that "zoning and inspection [are] governmental function[s,]" that "operating and maintaining a county office building is a governmental function," and that "Wilson County's water supply system is also a governmental function." In addition, Defendant Wilson County argues that Mr. Bynum's injuries did not stem from the operation of a water system. We do not find any of these contentions persuasive.

## 1. General Principles

"Sovereign immunity stands for the proposition that 'the State cannot be sued except with its consent or upon its waiver of immunity.' " *Dawes v. Nash Cty.*, 357 N.C. 442, 445, 584 S.E.2d 760, 762 (2003) (quoting *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998), and citing *Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983)). "The counties are recognizable units that collectively make up our state, and are thus entitled to sovereign immunity under North Carolina law." *Archer v. Rockingham Cty.*, 144 N.C. App. 550, 553, 548 S.E.2d 788, 790 (2001), *disc. rev. denied*, 355 N.C. 210, 559 S.E.2d 796 (2002). "Nevertheless, governmental immunity is not without limit. '[G]overnmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.' Governmental immunity does not, however, apply when the municipality engages in a proprietary function. . . . [In] determining whether an entity is entitled to governmental immunity, the result therefore turns on whether the alleged tortious conduct of the county or municipality arose from an activity that was governmental or proprietary in nature." *Estate of Williams v. Pasquotank County*, __ N.C. __, __, 732 S.E.2d 137, 141 (2012) (quoting *Evans v. Housing Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004), and citing *Grimesland v. Washington*, 234 N.C. 117, 123, 66 S.E.2d 794, 798 (1951)). " '[A]lthough an activity may be classified in general as a governmental function, liability in tort may exist as to certain of its phases; and conversely, although classified in general as proprietary, certain phases may be considered exempt from liability. [In addition], it does not follow that a particular activity will be denoted a governmental function even though previous cases have held the identical activity to be of such a public necessity that the expenditure of funds in connection with it was for a public purpose.' Consequently, the proper designation of a particular action of a county or municipality is a fact intensive inquiry, turning on the facts alleged in the complaint, and may differ from case to case." *Estate of Williams*, __ N.C. at __, 732 S.E.2d at 143 (quoting *Sides v. Hospital*, 287 N.C. 14, 21-22, 213 S.E.2d 297, 302 (1975) (citations and emphases omitted).

The fact-intensive nature of the determination of whether a plaintiff's suit is barred by governmental immunity is illustrated in *Town of Sandy Creek v. East Coast Contr. Inc.*, __ N.C. App __, __ S.E.2d __, __, 2013 N.C. App. LEXIS 384 [WL cite] (2013) (*Sandy Creek II*), in which an engineering firm sought to recover damages for "breach of contract, negligence, and indemnity and contribution" associated with the construction of a sewer system. *Id.*, 2013 N.C. App. LEXIS 384, at *2 [WL

cite at __]. On remand for further consideration in light of *Estate of Williams*, we "recognize[d] that judicial precedent has previously held that construction of a sewer system is a governmental function." *Id.*, 2013 N.C. App. LEXIS 384, at \*8 [WL cite at __] (citing *McCombs v. City of Asheboro*, 6 N.C. App. 234, 170 S.E.2d 169 (1969)). However, after concluding that "[construction of a sewer system] is not the nature of the claim in this case," we pointed out that " '[the] allegations of breaches of the duty of reasonable care [at issue in this case] do not concern decisions of governmental discretion such as whether to construct a sewer system or where to locate the sewer system' " and noted that, instead, " 'the alleged breaches concern [the municipality's] handling of the contract and [its] business relationship with the contractor, acts that are not inherently governmental but are commonplace among private entities.' " *Id.* (quoting *Town of Sandy Creek v. East Coast Contr., Inc.*, __ N.C. App. __, __ 736 S.E.2d 793, 797-98 (2012) (*Sandy Creek I*) (superseded by *Sandy Creek II*)). Thus, we held "that a local governmental unit acts in a proprietary function when it contracts with engineering and construction companies, regardless of whether the project under construction will be a governmental function once it is completed." *Sandy Creek II*, 2013 N.C. App. LEXIS 384, at \*10 [WL cite at __].

A reliance on the same fact-intensive approach to determining whether a particular activity should be deemed governmental or proprietary for governmental-immunity purposes can be seen in other cases as well. For example, in *Aaser v. Charlotte*, 265 N.C. 494, 497, 144 S.E.2d 610, 613 (1965), in which the plaintiff alleged that she was injured by children playing in a corridor of the Charlotte Coliseum, the Supreme Court held that "[a] city is engaging in a proprietary function when it operates . . . an arena, or leases it to the promoter of an athletic event" and that "the liability of the city and of the Authority to the plaintiff for injury, due to an unsafe condition of the premises, is the same as that of a private person or corporation." (citing *Carter v. Greensboro*, 249 N.C. 328, 333, 106 S.E.2d 564, 568 (1959) (other citation omitted). On the other hand, in *Robinson v. Nash County*, 43 N.C. App. 33, 36, 257 S.E.2d 679, 681 (1979), in which the plaintiff sought damages for injuries sustained after he fell down the stairs while visiting the Register of Deeds office, we determined that Nash County was entitled to the benefit of governmental immunity given that the operation of the register of deeds office "is clearly a governmental function for which the county enjoys immunity from suit for negligence." Similarly, in *Seibold v. Library*, 264 N.C. 360, 141 S.E.2d 519 (1965), the plaintiff sought a personal injury recovery after falling on the steps of a governmentally owned library.

In affirming the trial court's determination that the plaintiff's claim was barred by immunity-related considerations, the Supreme Court held that operation of a public library is a governmental, rather than proprietary, function.

An analysis of these and similar cases reveals that the determinative factor to be considered in ascertaining whether a particular injury resulted from a governmental or proprietary activity is the nature of the plaintiff's involvement with the governmental unit and the reason for the plaintiff's presence at a governmental facility rather than the underlying tasks which the governmental entity allegedly performed in a negligent manner. Although *Aaser* held that operation of a municipal arena was a proprietary function and *Robinson* and *Seibold* held that operating a register of deeds' office and a library were governmental functions, none of these decisions rested on a determination of the extent to which the particular actions that might have prevented the plaintiff's injury, such as posting guards in the Coliseum or maintaining the buildings in which the register of deeds office and library were housed, were "governmental" or "proprietary" in nature. As a result, instead of holding "that maintaining county property is a governmental function," the pertinent cases hold that, where a plaintiff is injured as a result of his or her involvement with a governmental function, such as transacting business at the register of deeds office or borrowing a book from a public library, the relevant governmental entity is immune from suit. On the other hand, if a plaintiff is injured as a result of his or her involvement with a proprietary function, such as attending an event at a governmentally owned facility, then governmental immunity is not available.

## 2. Applicability of Immunity-Related Principles in this Case

According to the undisputed evidence before the trial court, Mr. Bynum was injured after falling on the steps of a building maintained by Wilson County and utilized for a number of different purposes, including providing a place where customers of the county's water system could pay their bills. Mr. Bynum had visited the building to pay his water bill and was injured as he left the building after making a payment. Although Defendant Wilson County argues that the operation of a water system is a governmental function, it only cites cases discussing other services, such as the operation of a jail or library, in support of this proposition. An examination of the decisions of this Court and the Supreme Court addressing the status of governmentally owned water systems for immunity-related purposes indicates, however, Defendant Wilson County's argument lacks merit.

The Supreme Court has "long held that a municipal corporation selling water for private consumption is acting in a proprietary capacity and can be held liable for negligence just like a privately owned water company." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 225, 695 S.E.2d 437, 440 (2010) (citing *Mosseller v. City of Asheville*, 267 N.C. 104, 107, 147 S.E.2d 558, 561 (1966)). In other words, "[w]hen a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage to the property of others to the same extent and upon the same basis as a privately owned water company would be." *Bowling v. Oxford*, 267 N.C. 552, 557, 148 S.E.2d 624, 628 (1966) (citing *Mosseller*, 267 N.C. at 107, 147 S.E. 2d at 560; *Faw v. North Wilkesboro*, 253 N.C. 406, 409, 117 S.E. 2d 14, 17 (1960); and *Candler v. Asheville*, 247 N.C. 398, 406, 101 S.E. 2d 470, 476 (1958)) (other citations omitted). As a result, the operation of a municipal or county-owned water system is a proprietary rather than a governmental activity.

As we have already noted, a governmental entity acting in a proprietary capacity " 'is regarded as a legal individual . . . [which] may be held to that degree of responsibility which would attach to an ordinary corporation.' " *Pulliam v. City of Greensboro*, 103 N.C. App. 748, 751, 407 S.E.2d 567, 568 (quoting *McCombs*, 6 N.C. App. at 238, 170 S.E.2d at 172) (internal citation omitted), *disc. review denied*, 330 N.C. 197, 412 S.E.2d 59 (1991). For that reason, "a municipal corporation selling water for private consumption . . . is potentially liable for negligent acts of its agents or employees done in the scope of their agency or employment." *Fussell*, 364 N.C. at 225, 695 S.E.2d at 440 (citing *Jones v. Gwynne*, 312 N.C. 393, 409, 323 S.E.2d 9, 18 (1984), and *Munick v. Durham*, 181 N.C. 188, 195, 106 S.E. 665, 668 (1921) (stating that, "[w]hen cities are acting in their corporate character, or in the exercise of powers for their own advantage, they are liable for damages caused by the negligence or torts of their officers or agents").

According to well-established North Carolina law, a business owner is liable for the negligent maintenance of buildings in which customers may pay their bills.[4] For example, in *Lamm v. Bissette Realty*, 327 N.C. 412, 395 S.E.2d 112 (1990), the plaintiff was injured on the steps of a building to which she had gone for the purpose of paying an insurance bill. As a result of the fact that the "owners owe a duty to business

---

4. In light of this basic principle, Defendant Wilson County's argument that it should be deemed immune from suit in this case because Mr. Bynum's injuries did not result from the operation of the county's water system, narrowly defined, has no merit.

**BYNUM v. WILSON CNTY.**

[228 N.C. App. 1 (2013)]

invitees to keep the entrance in a reasonably safe condition," the Supreme Court held that "a jury could find that defendants were negligent for not attempting to correct what defendants themselves called an open and obvious condition - the sloping asphalt - by adding a handrail to make it reasonably safe." *Lamm*, 327 N.C. at 417, 395 S.E.2d at 116. The Supreme Court's holding in *Lamm* reflects the general rule that a business has a responsibility to exercise reasonable care to ensure that the premises on which others are entitled to come in the course and scope of the business' operations are safe. For example, in *Farrell v. Thomas and Howard Co.*, 204 N.C. 631, 633, 169 S.E. 224, 225 (1933), the plaintiff alleged, in pertinent part, that he "went upon the premises of the defendant as an invitee; that the steps leading from the office to the sidewalk were in an unsafe condition; . . . that the defendant knowingly, negligently, and wilfully failed to use due care in providing reasonably safe steps; [and] that[,] while on the steps and in the act of leaving the defendant's premises[,] the plaintiff was thrown to the sidewalk and injured[.]" In rejecting the defendant's contention that the plaintiff's complaint should have been dismissed, the Supreme Court held that "[t]he defendant owed to the plaintiff as its invitee the duty to exercise ordinary care for her safety in going into and retiring from the office." (citing *Ellington v. Ricks*, 179 N.C. 686, 690, 102 S.E. 510, 511 (1920)); *see also, e.g., Harrison v. Williams*, 260 N.C. 392, 395, 132 S.E.2d 869, 871 (1963) (stating that the "[d]efendant owed plaintiff, as invitee, the legal duty to maintain the aisles and passageways of its place of business in such condition as a reasonably careful and prudent proprietor would deem sufficient to protect patrons from danger while exercising ordinary care for their own safety") (citations omitted). As a result of the fact that the operation of a water system is a proprietary rather than a governmental function, the fact that Mr. Bynum was lawfully on the premises in question for the purpose of paying his water bill,[5] and the fact that Mr. Bynum allegedly sustained injuries as the result of negligence on the part of Defendant Wilson County as he left the building after paying his water bill, we conclude that Defendant Wilson County

---

5. Although the Supreme Court abolished the common law "trichotomy" distinguishing between invitees, licensees, and trespassers which governed premises liability actions at the time that the cases discussed in the text were decided in favor of a standard "requiring a standard of reasonable care for all lawful visitors" in *Nelson v. Freeland*, 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998), we do not believe that this change in the applicable legal standard undercuts the continued viability of the basic principle discussed in the text, which is that a landowner, such as a business, has a duty to exercise reasonable care to ensure that individuals lawfully coming on particular premises, such as a person seeking to pay a bill, are not injured.

is not entitled to the entry of judgment in its favor based on a defense of governmental immunity.

In seeking to persuade us to reach a contrary conclusion, Defendant Wilson County notes, among other things, that Plaintiffs have alleged that it is liable based, at least in part, on the basis of an allegedly negligent zoning and inspection of the county building at which Mr. Bynum's fall occurred. More specifically, Defendant Wilson County argues that, because zoning and building inspection are governmental functions, it should be deemed immune from suit in any civil action in which allegations of negligent zoning and inspection are made. However, the ultimate issue in this case is Defendant Wilson County's liability for negligence in connection with the operation of its water system, including its alleged failure to provide a reasonably safe place at which its customers could pay their bills or conduct other water system-related business. The assertions that Plaintiffs have made with respect to zoning and inspection-related issues relate to their contention that Defendant Wilson County asserted jurisdiction over the building in question for zoning and inspection-related purposes in an effort to avoid making modifications to or repairs of the building and do not constitute contentions that Defendant Wilson County erred in the course of making specific zoning or inspection-related decisions. As a result of the fact that, as we have already established, the determination of whether a governmental entity was engaging in a governmental or proprietary activity at the time that the plaintiff was injured focuses on the nature of the activity which led to the plaintiff's injury and the fact that the zoning and inspection-related issues which Plaintiffs have raised do not involve any effort to look behind specific zoning and inspection-related decisions that Defendant Wilson County made, we do not believe that this aspect of Defendant Wilson County's argument has merit.

In addition, Defendant Wilson County posits that, because the water system's office is located in a county building, it is immune from suit on the grounds that "Wilson County is entitled to governmental immunity for operating its main office building." As we understand this argument, Defendant Wilson County is contending for the recognition of a general rule affording immunity from suit for any injury which might have occurred in connection with the "operat[ion] and maintain[ance of] a county office." The decisions upon which Defendant Wilson County relies in support of this proposition, however, find the existence of immunity from suit based on the nature of the underlying function being performed at the time of the plaintiff's injury rather than the nature of the tasks associated with maintenance of a governmentally owned building.

*E.g. Hayes v. Billings,* 240 N.C. 78, 80, 81 S.E.2d 150, 152 (1954) (county jail); *Seibold v. Kinston,* 268 N.C. 615, 620-21, 151 S.E.2d 654, 658 (1966) (public library); *Doe v. Jenkins,* 144 N.C. App. 131, 134, 547 S.E.2d 124, 127 (2001) (county courthouse), *disc. review denied,* 355 N.C. 284, 560 S.E.2d 799 (2002); and *Robinson,* 43 N.C. App. at 36, 257 S.E.2d at 681 (register of deeds office). We are unable to read any of these decisions as holding, consistently with Defendant Wilson County's position, that a county or municipality is immune from any suit seeking recovery for injuries allegedly resulting from the "maintenance" of a governmentally owned building, regardless of the manner in which the building is used or the reason for the plaintiff's presence at that building.

Finally, Defendant Wilson County suggests that "[Mr. Bynum's] subjective intent is not the appropriate basis for determining whether Wilson County was performing a governmental function at the time [he] was injured" and that, "[f]ollowing Plaintiffs-Appellees' logic, if [Mr. Bynum] had chosen to travel to the post office to mail his water bill, and was injured in a car accident on the way, [his] injuries would have risen out of a governmental function." We do not find this logic persuasive, given the obvious differences between the claims that Plaintiffs have asserted in this case from those posited by Defendant Wilson County and the absence of any authority tending to suggest that a business has a duty to ensure that the roads upon which its customers travel are maintained in a safe manner or to prevent its customers from being injured by the negligent driving of third parties. For that reason, Defendant Wilson County's "parade of horribles" argument does not persuade us to overturn the trial court's decision.

We do, however, recognize that our reading of the applicable law raises the prospect for potentially troubling results, such as making liability for falls like that suffered by Mr. Bynum contingent upon whether a plaintiff injured in a fall at a county-owned office building used for multiple purposes was on the premises for the purpose of paying a bill for water service or seeking the issuance of a building permit. On the other hand, the adoption of the approach advocated by Defendant Wilson County creates a risk of equally anomalous results, given that, under its understanding of the applicable law, an individual injured in a fall while paying a water bill would be able to pursue a damage recovery in the event that the governmentally owned water system was operated from a separate building while having no right to pursue such a recovery in the event that the water system was operated from a building that contained other offices performing clearly governmental functions.

The existence of anomalies similar to those that result from the adoption of either approach advocated in this case have been recognized in a slightly different context by the Supreme Court:

> It is generally held, that insofar as a town or city undertakes to sell water for private consumption it is engaged in a commercial venture, as to which it functions in a proprietary or corporate capacity, and for negligence in connection therewith it is liable. Insofar, however, as a municipality undertakes to supply water to extinguish fires, or for some other public purpose, it acts in a governmental capacity, and cannot be held liable for negligence.

*Faw*, 253 N.C. at 409-10, 117 S.E.2d at 17 (citing *Klassette v. Drug Co.*, 227 N.C. 353, 360, 42 S.E.2d 411, 416 (1947); *Woodie v. North Wilkesboro*, 159 N.C. 353, 356, 74 S.E. 924, 925 (1912) (additional citation omitted)); *see also, e.g., Candler*, 247 N.C. at 406, 101 S.E.2d at 476 (stating that "public utilities, like water . . . are not provided by a municipality in its political or governmental capacity, except insofar as they may furnish water for extinguishing fires and for other municipal purposes") (citing *Fawcett v. Mt. Airy*, 134 N.C. 125, 129, 45 S.E. 1029, 1030 (1903); *Harrington v. Greenville*, 159 N.C. 632, 635-36, 75 S.E. 849, 850-51 (1912); *Howland v. Asheville*, 174 N.C. 749, 750, 94 S.E. 524, 524-25 (1917); and *Klassette*, 227 N.C. at 360, 42 S.E.2d at 416). A careful reading of these cases suggests that, in the event that a county or city water system negligently allows a water pipe to burst, the county would not be immune from a suit stemming from damage to the plaintiff's property resulting from water intrusion while being entitled to assert immunity from a suit alleging that, as a result of the same burst water pipe, the plaintiff had been unable to have a fire that burned his or her residence extinguished. Although such results may seem arbitrary or illogical, they are inherent in the application of the dichotomy between governmental and proprietary functions required by North Carolina law. As the Supreme Court stated in *Koontz v. City of Winston-Salem*, 280 N.C. 513, 528, 186 S.E.2d 897, 907 (1972):

> The case law defining governmental and proprietary powers as relating to municipal corporations is consistent and clearly stated in this and other jurisdictions. However, application of these flexible propositions of law to given factual situations has resulted in irreconcilable splits of authority and confusion as to what functions are governmental and what functions are proprietary. . . .

Even so, "it is axiomatic that any change to the law in this area must come from the legislature, not the courts." *Clayton v. Branson*, 170 N.C. App. 438, 460, 613 S.E.2d 259, 274 (citing *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324, 420 S.E.2d 432, 435-36 (1992) (stating that, while "plaintiff asks us either to abolish governmental immunity or to change the way it is applied," "any change in this doctrine should come from the General Assembly."), *disc. review denied*, 360 N.C. 174, 625 S.E.2d 785 (2005).[6] As a result, given that we are required to determine whether the activity at issue here was governmental or proprietary in nature, we conclude that the operation of a system for distributing water to the public is a proprietary activity and that Mr. Bynum's injuries stemmed from alleged negligence associated with and inherent in the operation of such a water system, necessitating the further conclusion that the trial court did not err by determining that Defendant Wilson County is not entitled to immunity from suit in this case on the basis of governmental liability.[7]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Plaintiffs' motion to dismiss Sleepy Hollow's appeal from the trial court's order as

---

6. Appellate courts in many other jurisdictions have noted that "application of the governmental/proprietary distinction 'to the facts of a particular case has led to seemingly incongruous and diverse results.'" *Cunningham v. City of Attalla*, 918 So. 2d 119, 124 (Ala. Civ. App. 2005) (quoting *Hillis v. City of Huntsville*, 274 Ala. 663, 667, 151 So. 2d 240, 243 (1963)). *See, e.g., Tarbell Adm'r, Inc. v. City of Concord*, 157 N.H. 678, 682-83, 956 A.2d 322, 326 (2008) (stating that, although courts have attempted "to alleviate the harshness of the results produced by municipal immunity" by "distinguish[ing] between municipal functions that were 'governmental with immunity on the one hand, and proprietary with liability on the other hand,'" "this often artificial distinction [has] produced results [in practice] that were not only 'confused, inconsistent and difficult,' but absurd") (quoting *Gossler v. Manchester*, 107 N.H. 310, 315, 221 A.2d 242, 245 (1966) (Kenison, J., dissenting), *superseded by statute as stated in Dover v. Imperial Casualty & Indem. Co.*, 133 N.H. 109, 575 A.2d 1280 (1990)); *Greene County Agric. Soc'y v. Liming*, 89 Ohio St. 3d 551, 558, 733 N.E.2d 1141, 1147 (2000) (stating that the "attempted distinction between governmental and proprietary functions is a 'morass of conflict and confusion,' 'has been difficult and frequently leads to absurd and unjust consequences'") (quoting *Hack v. Salem*, 174 Ohio St. 383, 394, 189 N.E.2d 857, 864 (1963) (Gibson, J., concurring in judgment); and *Hudson v. Town of East Montpelier*, 161 Vt. 168, 177-78 n.3, 638 A.2d 561, 567 n.3 (1993) (stating that "Vermont is one of a minority of states that retains the governmental-proprietary distinction, which has been criticized by courts and commentators for many years as unworkable").

7. Although Defendant Wilson County also argues that it had not waived immunity by purchasing insurance that provided coverage for Plaintiffs' claims, we need not address this issue given the decision enunciated in the text of this opinion.

having been taken from an unappealable interlocutory order should be allowed, that Defendant Wilson County's attempt to assert non-immunity-related challenges to the trial court's order should be dismissed for the same reason, and that the trial court did not err by denying Defendant Wilson County's motion for summary judgment on governmental immunity grounds. As a result, the trial court's order should be, and hereby is, affirmed in part and Defendant's appeals should be, and hereby are, dismissed in part.

AFFIRMED IN PART AND DISMISSED IN PART.

Chief Judge MARTIN and Judge DILLON concur.